UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANA-SIMONE WILLIAMS, | Civil Action No.: |
| Plaintiff, | 2:22-cv-00983(NJC)(AYS) |
| v. | **Served on October 20, 2023** |
| THE LAW OFFICES OF FREDERICK K. BREWINGTON, FREDERICK K. BREWINGTON, in both his individual and professional capacities, and PRECILLA LOCKETT, in her individual and professional capacities, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DIMISS PURSUANT TO FRCP 12(b)(1) AND (6) AND FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT FACTS ............................................................................................... 2

I.      BACKGROUND .......................................................................................... 2

II.     PLAINTIFF'S TITLE VII CLAIMS ............................................................ 3

III.    DEFENDANT EMPLOYED 15 OR MORE EMPLOYEES IN 2020 AND
        2021 AND WAS AN EMPLOYER UNDER TITLE VII ................................ 4

        A.      The Firm's Employment of Oscar Holt ......................................... 4

        B.      The Firm's Employment of Steven Tannenbaum ................................. 6

RELEVANT PROCEDURAL HISTORY ................................................................ 8

ARGUMENT .......................................................................................................... 9

IV.     DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED................................ 9

        A.      Defendant Blatantly Disregards the Court's Order Denying its
                Initial Motion to Dismiss ................................................................ 9

        B.      The Court Has Subject Matter Jurisdiction ......................................... 10

        C.      Plaintiff Has Sufficiently Pled that the Firm is an Employer
                Under Title VII ............................................................................... 12

V.      THE FIRM'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ....... 13

        A.      Legal Standard ................................................................................ 13

        B.      Defendant was an Employer Under Title VII in 2020 and 2021 ......................... 14

                i.      Oscar Holt was an Employee of the Firm in 2020 and 2021 ................... 16

                ii.     Steven Tannenbaum was an Employee of the Firm in
                        2020 and 2021 ..................................................................... 20

        C.      Plaintiff is Entitled to Additional Discovery Related to the *Reid* Factors ........... 24

CONCLUSION ....................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Ayala v. Metro One Sec. Sys., Inc.*,
    No. 11-cv-233 (JG)(ALC), 2011 WL 1486559 (E.D.N.Y. Apr. 19, 2011) ............................12

*Carmona v. Toledo*,
    215 F.3d 124 (1st Cir. 2000)...........................................................................................25

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989)....................................................................................... *passim*

*Da Silva v. Kinsho Int'l Corp.*,
    229 F.3d 358 (2d Cir. 2000)...........................................................................................11

*Danzer v. Norden Sys., Inc.*,
    151 F.3d 50 (2d Cir. 1998)..............................................................................................13

*Eastway Constr. Corp. v. City of N.Y.*,
    762 F.2d 243 (2d Cir. 1985)...........................................................................................13

*Felder v. United States Tennis Ass'n*,
    27 F.4th 834 (2d Cir. 2022) .....................................................................................16, 17

*Fernandez v. M & L Milevoi Mgmt., Inc.*,
    357 F. Supp. 2d 644 (E.D.N.Y. 2005) .......................................................................9, 10

*Foresta v. Centerlight Cap. Mgmt., LLC*,
    379 F. App'x 44 (2d Cir. 2010) ...............................................................................17, 25

*Frederick v. United Bhd. of Carpenters & Joiners of Am. (UBCJA) Loc. 926*,
    558 F. App'x 83 (2d Cir. 2014) .....................................................................................14

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
    22 F.3d 1219 (2d Cir. 1994)...........................................................................................13

*Hassanein v. Gino's Italian Rest. on 5th*,
    No. 16-cv-3365(AMD)(ST), 2017 WL 4350515 (E.D.N.Y. Mar. 27, 2017) .........................10

*Heyman v. Commerce & Indus. Ins. Co.*,
    524 F.2d 1317 (2d Cir.1975)...........................................................................................13

*Holcombe v. Advanced Integration Tech.*,
    No. 4:17-cv-522, 2018 WL 4908266 (E.D. Tex. Oct. 10, 2018)............................................26

*Jianshe Guo v. A Canaan Sushi Inc.*,
    No. 18-cv-4147 (JMF), 2019 WL 1507900 (S.D.N.Y. Apr. 5, 2019) .................................9, 11

*Katz v. Adecco USA, Inc.*,
   No. 11-cv-2540 (HB)(AJP), 2011 WL 2436670 (S.D.N.Y. June 16, 2011)...........................24

*Krasner v. Episcopal Diocese of Long Island*,
   431 F. Supp. 2d 320 (E.D.N.Y. 2006) ...............................................................10, 11

*Ogden v. Patriot Mun. Util.*,
   No. 4:13-cv-00072 (SEB), 2014 WL 4722606 (S.D. Ind. Sept. 22, 2014)...........................25

*Parks v. Woodbridge Golf Club, Inc.*,
   No. 11-cv-0562, 2016 WL 8716606 (E.D. Pa. July 22, 2016) ................................15

*Pawlowski v. Scherbenske*,
   891 F. Supp. 2d 1077 (D.S.D. 2012) ................................................................15

*Rovira v. New York Apparel Sales*,
   No. 01-cv-2231 (ILG), 2002 WL 1471557 (E.D.N.Y. May 31, 2002)..................................12

*Widman v. Stegman*,
   No. 13-cv-00193 (BKS)(DEP), 2015 WL 13766325 (N.D.N.Y. Aug. 12,
   2015) .......................................................................................................12, 14

**Statutes**

42 U.S.C. § 2000e(b) .........................................................................................13, 14, 15

42 U.S.C. § 2000e(f) .................................................................................................16

N.Y. Lab. Law § 201-g(2)(c) .....................................................................................19

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) and (6) ...............................................................................8

FRCP 56(a) .................................................................................................................13

FRCP 56(d)(2) ............................................................................................................24

## PRELIMINARY STATEMENT

In a blatant attempt to circumvent an Order of this Court, Defendant reasserts its failed motion to dismiss Plaintiff's Title VII claims based on arguments this Court already rejected.  On August 21, 2023, the Court heard arguments on whether Plaintiff's Title VII claims should be dismissed for lack of subject matter jurisdiction and failure to state a claim.  Defendant erroneously asserted, as it does again here, that the Amended Complaint does not contain an allegation that Defendant employed 15 or more employees during the relevant years, which is an element of a Title VII claim.  It is black letter law that Title VII's number of employees requirement is not jurisdictional or appropriate for dismissal for failure to state a claim.  Therefore, the Court denied Defendant's motion stating, "to the extent the defendant is moving on the grounds that the…specific allegation in the complaint about the 15 employees, I'm denying that motion because at best I would simply let the plaintiff amend to include that allegation."

Defendant also wrongly claims that it is entitled to summary judgment and dismissal of Plaintiff's Title VII claims because she supposedly cannot show that the Firm employed 15 or more employees in 20 or more weeks in 2020 or 2021, the relevant years.  Although Defendant has continuously attempted to frustrate discovery and delay this action, even limited discovery shows that Plaintiff can prove the Title VII threshold element.  As discovery progressed, it became clear that Defendant employed a minimum of 14 employees in more than 20 or more weeks in 2020 and 2021.  After discovery revealed that two supposed volunteer attorneys were actually employees, the Title VII threshold was crossed.  At the very least, discovery has shown there are genuine disputes of material fact concerning Title VII applicability.  As such, Plaintiff's Title VII claims should proceed, and the parties should engage in full discovery.

Although the record shows that the Title VII applicability issue is ripe for trial, should the Court find otherwise, Plaintiff should be permitted to engage in limited additional discovery. As noted above, Defendant attempted to frustrated discovery related to Title VII applicability, especially in connection with its claims that attorneys who have worked for the Firm for years are "unpaid volunteers," not employees. Plaintiff seeks discovery related to the factors laid out by the Supreme Court in *Cmty. for Creative Non-Violence v. Reid*, which are used to help determine whether an individual is an employee under Title VII.

During initial discovery, Plaintiff was limited to one three-hour FRCP 30(b)(6) deposition prior to engaging in document discovery. However, it is critical for Plaintiff to be able to depose the alleged volunteer attorneys as well as the Firm's founder after additional document discovery is completed. Otherwise, it is difficult if not impossible for Plaintiff to challenge Defendant's unsupported and conclusory assertions about the alleged volunteer attorneys, including claims that the Firm does not exert any control over them or provide them with any compensation or benefits at all. Ultimately, if the Firm is able to escape additional discovery related to Title VII applicability, Defendant will be rewarded for withholding relevant and critical discovery that Plaintiff has zero ability to access without the Firm's participation. Therefore, Plaintiff's request should be granted.

## **RELEVANT FACTS**[1]

## I.     **BACKGROUND**

Defendants The Law Offices of Frederick K. Brewington ("Defendant" or the "Firm") and Frederick K. Brewington ("Brewington") initially hired Plaintiff in July 2019 to be a

---

[1] For additional facts, Plaintiff respectfully refers the Court to her Local Rule 56.1 Counterstatement of Material Facts ("56.1 Counterstatement"). All references to the 56.1 Counterstatement are cited as "56.1 ¶ __," and exhibits to the same are cited as "Ex. __." All defined terms have the same meaning as set forth in the 56.1 Counterstatement.

paralegal/legal assistant.  56.1 ¶ 1.  In this role, Plaintiff reported directly to Brewington, all other attorneys at the firm, and Precilla Lockett, the Firm's office manager.  *Id.* ¶ 2.

During her employment, Plaintiff was trusted with several important responsibilities, including conducting detailed intake calls which are directly related to the Firm's ability to assess potential cases, drafting federal and State court Summons and Complaints, and drafting complaints to the New York State Division of Human Rights.  *Id.*  Plaintiff was also staffed on several important cases, including the Firm's representation of Christopher Cruz who was assaulted by Suffolk County police officers during an arrest and Kyrin Taylor, a Black man who found two nooses hung in a work area of his former employer.  *Id.*

## II.   <u>PLAINTIFF'S TITLE VII CLAIMS</u>

At the Firm, Plaintiff was forced to endure repeated sexual harassment by multiple male employees, including Brewington's cousin Dwayne Lindsey ("Lindsey") who stalked and harassed her, and also harassed, assaulted, and raped Gabrielle Leparik ("Leparik"), a former receptionist at the Firm.  Ex. 19 ("Williams Decl.") ¶ 38.  When Plaintiff notified Brewington and Defendant Precilla Lockett ("Lockett"), the Firm's office manager, of the pervasive sexual harassment at the Firm and of Lindsey's sexual harassment and rape of Leparik, they did nothing to address her concerns and dismissed her complaints.  *Id.* ¶ 39.  As a direct result of her complaints of sexual harassment, Defendants terminated Plaintiff employment on June 14, 2021.  *Id.* ¶ 40.

As a result of blatant and unlawful discrimination and retaliation she experienced during her employment, Plaintiff brought this action and asserted claims under, *inter alia*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").  *See generally*, ECF No. 17 ("Amended Complaint").

III.  **DEFENDANT EMPLOYED 15 OR MORE EMPLOYEES IN 2020 AND 2021 AND WAS AN EMPLOYER UNDER TITLE VII**

Without accounting for supposed volunteers or independent contractors, the evidentiary record is clear that Defendant employed 14 employees for 33 weeks in 2020 and 14 or more employees in 21 weeks in 2021.  *See* 56.1 ¶ 6; *see also* Exs. 11 at 6-10 (Responses to Interrogatory Nos. 7-12); 12 (chart summarizing employees' start and end dates reflected in Defendant's responses to Interrogatory Nos. 7-12); 13 (chart demonstrating that Defendant employed 14 employees for 33 weeks in 2020); 14 (chart demonstrating that Defendant employed 14 or more employees in 21 weeks in 2021).  Because Oscar Holt ("Holt") and Steven Tannenbaum ("Tannenbaum") were employees throughout 2020 and 2021, not unpaid volunteer attorneys, Defendant was an employer under Title VII.

A.  **The Firm's Employment of Oscar Holt**

Holt has been an attorney at and worked for the Firm since April 2018, when Brewington hired him.  *See* 56.1 ¶¶ 6-7; *see also* Exs. 1 ("Mr. Holt will be joining our office as a member of the legal staff in an of counsel role."), 2 ("It is with a great amount of excitement that we announce that Attorney Oscar Holt III has joined The Law Offices of Frederick K. Brewington as a member of the legal staff in an of counsel role… His joining our office is and will enhance the work of the firm in many ways."), 3 ("Brewington Tr.") at 131:15-23 (admission that Holt worked for the Firm in 2020 and 2021).  At the time Holt was hired, Brewington made it clear that Holt was winding down his private practice to focus on his work for the Firm.  *See* 56.1 ¶¶ 6-7; *see also* Ex. 1 ("He is a very experienced trial lawyer and, while limited, he will continue to maintain his private practice of law.").

Since the Firm hired Holt, Defendant added an entire page to its website dedicated to Holt and has represented him publicly as an attorney of the Firm.  *See* 56.1 ¶¶ 6-7; *see also* Ex. 4.  Also,

Defendant has prominently listed Holt on the Firm's letterhead for years.  *See, e.g.*, Ex. 5. Additionally, Holt lists the Firm as his employer on his New York State Unified Court System profile.  *See* Def. Ex.[2] R.

Throughout Holt's employment with the Firm, Defendant has treated and exerted control over Holt the same as any other employee.  Indeed, during Plaintiff's employment at the Firm, Defendant required employees to work Mondays through Fridays from around 10:00 a.m. to around 5:00 p.m. each day, and Holt regularly worked under this schedule.  *See* 56.1 ¶¶ 6-7. Defendant also requires employees to attend weekly calendar meetings every Friday around 2:00 p.m. in a conference at the Firm.  *See id.*  During weekly calendar meetings, the Firm's staff discusses their ongoing and pending cases as well as information from intake calls with prospective clients.  *See id.*  Defendant required Holt to attend weekly calendar meetings.  *See id.*  Plaintiff missed only five to ten weekly calendar meetings throughout her almost three years at the Firm and Holt was present at each weekly calendar meeting she attended.  *See id.*  Additionally, in the weekly calendar meetings, Brewington instructed Holt and other attorneys to attend upcoming court conferences and address imminent deadlines.  *See id.*  Brewington also assigned Holt and other attorneys to new cases the Firm was taking on.  *See id.*  Further, Defendant has required Holt to sign a Sexual Harassment Policy Receipt and Acknowledgement Form, which is specifically related to a New York State law mandating sexual harassment training for employees.  *See* Ex. 6.

During his over four and a half years at the Firm, Holt has been a vital part of the Firm's business.  Specifically, Holt has worked on the Firm's criminal defense cases as well as actions related to the Firm's other practice areas.  *See* 56.1 ¶¶ 6-7; *see also* Exs. 1 ("[Holt's] area of

---

[2] All references to exhibits to the Declaration of Frederick K. Brewington (ECF No. __) are cited as "Def. Ex. __."

specialty most recently has been criminal defense, but he is eager to learn more about other aspects of our work."); 2 ("[Holt's] area of specialty most recently has been criminal defense, but he is expanding his work to match the other aspects of the work of the office."); Ex. 7 (Holt's Notice of Appearance on behalf of the Firm). Plaintiff was assigned to assist Holt with the Firm's criminal cases and met with him almost every day to discuss those cases. *See* 56.1 ¶¶ 6-7. Holt also assigned Plaintiff various assignments and tasks related to the cases that they worked on together. *Id.* At any given time during her employment, Plaintiff worked on around four to five criminal cases with Holt. *See id.* Holt also decided whether the Firm should take on a prospective criminal client, and, if he decided that the Firm should take on a prospective criminal client, what fee the Firm should charge. *See id.*

The Firm has provided Holt with the resources he needed to perform his work for the Firm. Since Brewington hired Holt in 2018, the Firm has provided Holt with a Firm email address. *See, e.g.*, Def. Ex. R. The Firm also provided and continues to provide Holt with legal staff to assist him with his work. *See* 56.1 ¶¶ 6-7; *see also* Ex. 1 ("I ask you to join me in welcoming him and encourage you to provide him with your full support and assistance as he learns more about what and how we do things in the office."). The Firm has given Holt with an office across from one of its conference rooms. *See* 56.1 ¶¶ 6-7; *see also* Ex. 1 ("Mr. Holt, [sic] will be occupying the office directly across from conference room 2."). Further, the Firm has supplied Holt with a file cabinet in one of the hallways in the office to store files related to the cases he works on and leads for the Firm. *See* 56.1 ¶¶ 6-7.

**B.     The Firm's Employment of Steven Tannenbaum**

Tannenbaum is an attorney who worked at the Firm during Plaintiff's employment. *See* 56.1 ¶¶ 6, 9. During that time, Tannenbaum handled all of the Firm's medical malpractice cases.

*See id.*  Indeed, Brewington directed Plaintiff to discuss all potential medical practice cases with Tannenbaum.  *See id.*  In connection with that instruction, Plaintiff would contact Tannenbaum and relay information she obtained during intake calls for prospective medical malpractice matters.  *See id.*  Tannenbaum then decided whether the Firm should take the prospective cases.  *See id.*  Plaintiff was then required to consult Brewington so that he could sign off on Tannenbaum's decision.  *See id.*

While Plaintiff was employed at the Firm, Tannenbaum handled several medical malpractice cases, including cases related to clients Gail Robinson-Lee and Melvin Bloom, and Plaintiff was assigned to assist Tannenbaum with those cases.  *See id.*  Plaintiff spoke with Tannenbaum almost every day about the cases they worked on together.  *See id.*  During those conversations, Brewington directed Plaintiff to complete assignments and tasks.  *See id.*

In connection with his work on medical malpractice cases for the Firm, Tannenbaum worked at Defendant's office at least two days per week during Plaintiff's employment.  *See id.*  When Tannenbaum worked at Defendant's office, Tannenbaum and Plaintiff would meet in a conference to go over various assignments and discuss the status of their cases.  *See id.*

Defendant compensated Tannenbaum for the work he performed for the Firm.  Indeed, during a telephone call between Tannenbaum and Plaintiff in 2021, Tannenbaum complained to Plaintiff that Brewington owed him $1,000 in connection with work that Tannenbaum completed related to the Melvin Bloom matter.  *See id.*  Of course, Tannenbaum would not have made such a complaint if he had not come to an agreement with Brewington concerning compensation for the work he performed for the Firm.

## **RELEVANT PROCEDURAL HISTORY**

On May 31, 2022, Plaintiff filed an Amended Complaint, alleging, *inter alia*, claims under Title VII. ECF No. 17 ¶¶ 12, 202-217. In the Answer to the Amended Compliant, the Firm claimed that it is not an employer under Title VII. *See* ECF No. 24 ¶¶ 21, 244.

On July 11, 2023, the Firm filed a pre-motion conference letter seeking to dismiss Plaintiff's Title VII's claims for supposed lack of subject matter jurisdiction and failure to state a claim. *See* ECF Nos. 37, 38. On August 21, 2023, the Court held a conference, denied the Firm's motion, and directed Defendant to file a motion for summary judgment.[3] *See* ECF No. 39; *see also* Ex. 10 at 5:16-6:6 ("So to the extent the defendant is moving on the grounds that the…specific allegation in the complaint about the 15 employees, ***I'm denying that motion because at best I would simply let the plaintiff amend to include that allegation***.") (emphasis added).

On September 20, 2023, in defiance of the Court's Order, the Firm filed a second motion to dismiss under FRCP 12(b)(1) and (6) asserting identical arguments the Court previously rejected. *See* ECF No. 37 ("Def. Br.") at 1, 6-13. The Firm also moved for summary judgment related to Plaintiff's Title VII claims, claiming Plaintiff supposedly cannot establish that the Firm had 15 or more employees in 2020 or 2021, which is an element of Plaintiff's Title VII claims. *See* Def. Br. at 13-22.

---

[3] Rule II(g)(1) of the Individual Rules the Honorable Gary R. Brown, the District Court Judge previously assigned to this action, provides that "Counsel should note that, in appropriate cases, the pre-motion letter along with counsel's argument at the pre-motion conference, may be construed, at the discretion of the Court, as the motion itself." Ex. 9. As noted above, the Court exercised its discretion during the August 21 pre-motion conference and denied the Firm's motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6). *See infra* at 9.

## ARGUMENT

## IV.    DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED

### A.    Defendant Blatantly Disregards the Court's Order Denying its Initial Motion to Dismiss

The Firm deliberately disregarded the Court's Order denying its initial motion to dismiss and improperly seeks to use this application to circumvent the Court's decision.  On July 11, 2023, the Firm filed a pre-motion conference letter seeking to dismiss Plaintiff's Title VII claims pursuant to FRCP 12(b)(1) and (6).  *See* ECF No. 37.  Despite engaging in months of discovery related to Title VII applicability, the Firm claimed that Plaintiff had not specifically alleged that the Firm employed 15 employees during the relevant years.  *See id.*  Plaintiff submitted her opposition on August 7, 2023, and the Court held a conference on August 21, 2023.  *See* ECF Nos. 38-39.

During the August 21 conference, the Court denied the Firm's motion to dismiss.  *See* Ex. 10 at 4-5.  Specifically, the Court stated, "[T]o the extent the defendant is moving on the grounds that the…specific allegation in the complaint about the 15 employees, ***I'm denying that motion because at best I would simply let the plaintiff amend to include that allegation***."  *Id.* at 5 (emphasis added).  The Court then directed the parties to brief a summary judgment motion on Title VII applicability.  *See id.* at 6.

Incredibly, in disregard of the Court's August 21 Order, Defendant has refiled its failed motion dismiss and asserts the same failed arguments the Court already rejected.  *See* Def. Br. at 1, 6-13.  The Firm's conduct is not only egregious but sanctionable.  *See Jianshe Guo v. A Canaan Sushi Inc.*, No. 18-cv-4147 (JMF), 2019 WL 1507900, at *4 (S.D.N.Y. Apr. 5, 2019) ("Sanctions are [] appropriate when counsel disregards a clear and unambiguous court order.") (citing *S. New*

*England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010)).  As such, the Court should disregard the Firm's repeat motion to dismiss.

Even if the Court considers Defendant's motion to dismiss for a second time, Defendant's arguments again fail, and its motion should be denied.

### B.    The Court Has Subject Matter Jurisdiction

The Court has subject matter jurisdiction because Plaintiff has brought claims under Title VII.  *See Fernandez v. M & L Milevoi Mgmt., Inc.*, 357 F. Supp. 2d 644, 647 (E.D.N.Y. 2005) ("[S]ection 2000e–5(f)(3) requires only that the action is 'brought under' Title VII."); *see also* Amended Complaint ¶¶ 12-13, 16-19, 202-217.  The Firm asserts that the Court lacks subject matter jurisdiction because it supposedly did not employ 15 or more employees in 2020 or 2021, which is the threshold number of employees for application of Title VII.  *See* ECF No. 37. However, "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Hassanein v. Gino's Italian Rest. on 5th*, No. 16-cv-3365(AMD)(ST), 2017 WL 4350515, at *4 (E.D.N.Y. Mar. 27, 2017) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006)).  Indeed, courts have routinely rejected the same arguments the Firm asserts here.  *See id.* (denying motion to dismiss for lack of subject matter jurisdiction and noting that Title VII's employee threshold requirement is not jurisdictional); *see also Krasner v. Episcopal Diocese of Long Island*, 431 F. Supp. 2d 320, 323 (E.D.N.Y. 2006) (same); *Fernandez*, 357 F. Supp. 2d at 647 (same).  Therefore, the Court clearly has subject matter jurisdiction over Plaintiff's Title VII claims.

Ironically, in moving to dismiss for lack of subject matter jurisdiction, Defendant acknowledges that "[t]he threshold number of employees for application of Title VII to an entity alleged to be an 'employer' is not a just a jurisdictional issue, but rather an element of plaintiff[']s

claim." Def. Br. at 8 (citing *Luna v. North Babylon Teacher's Org.*, 11 F. Supp. 3d 396, 402 (E.D.N.Y. 2014) ("[T]he Supreme Court of the United States has held that the 'number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue.'") (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516, (2006))).

Nevertheless, Defendant erroneously claims it can still move to dismiss for lack of subject matter jurisdiction and cites to *Krasner*. However, in *Krasner*, the court denied defendant's motion to dismiss for lack of subject matter jurisdiction related to Title VII's threshold number of employees requirement. 431 F. Supp. 2d at 323. Also, the *Krasner* court noted that the defendant brazenly defied its previous order rejecting the exact same arguments. *See id.* at 322-23 ("The motion by the Church to dismiss the second amended complaint for lack of subject matter jurisdiction contains the same two arguments that were advanced, and rejected, in its previous motion to dismiss the amended complaint."). Incredibly, the defendant in *Krasner* was represented by Brewington, highlighting Brewington's propensity for blatantly disregarding this Court's Orders and disrespect for the time and resources of the Court and parties. Again, Brewington's conduct is plainly sanctionable. *See Jianshe*, 2019 WL 1507900, at *4 ("Sanctions are [] appropriate when counsel disregards a clear and unambiguous court order.") (citation omitted).

Defendant also mistakenly relies on *dicta* in *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358 (2d Cir. 2000). *See* Def. Br. at 11. *Da Silva* is yet another case cited by Defendant holding that "the threshold number of employees for application of Title VII is not a jurisdictional issue[.]" 229 F.3d at 366. Still, to support its position, Defendant cites to *dicta* in *Da Silva* stating that "[i]f [] a complaint alleged fewer than fifteen employees, the complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim, or under Rule 12(b)(1) if the pleading were deemed so demonstrably without substance as not even to invoke jurisdiction under Title VII." *Id.* at 366

11

n. 9.  Here, Plaintiff does not allege that Defendant employed fewer than 15 employees.  *See* Amended Complaint ¶ 23.  Instead, Plaintiff has plausibly alleged that Defendant is an employer under Title VII.  *See id.*; *see also infra* pp. 13-14.

As such, Defendant's arguments are baseless.

### C.     Plaintiff Has Sufficiently Pled that the Firm is an Employer Under Title VII[4]

Plaintiff has plausibly alleged that the Firm is an employer pursuant to Title VII.  "To survive a motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Ayala v. Metro One Sec. Sys., Inc.*, No. 11-cv-233 (JG)(ALC), 2011 WL 1486559, at *3 (E.D.N.Y. Apr. 19, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677, (2009)).  "When deciding a Rule 12(b)(6) motion to dismiss, a court must limit its consideration to the allegations 'contained within the four corners of the complaint.'"  *Id.* (quoting *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir.2010)).  "The court also must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor."  *Id.* (citing *Shomo v. City of New York*, 570 F.3d 176, 183 (2d Cir.2009)).

Under Title VII, "[a]n 'employer' is defined as 'a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person.'"  *Widman v. Stegman*, No. 13-cv-00193 (BKS)(DEP), 2015 WL 13766325, at *2 (N.D.N.Y. Aug. 12, 2015) (quoting 42 U.S.C. § 2000e(b)).

---

[4] As a preliminary matter, Defendant argues that Plaintiff cannot maintain Title VII claims against Brewington or Lockett, the individual defendants.  Def. Br. at 9-10.  However, Plaintiff does not assert Title VII claims against Brewington or Lockett.  *See* Amended Complaint ¶¶ 202-217.

Plaintiff has alleged that "[a]t all relevant times, the Firm was Plaintiff's 'employer' within the meaning of all relevant statutes and regulations."  Amended Complaint ¶ 23.  The Amended Complaint also incorporates the Charge of Discrimination Plaintiff filed with the Equal Employment Opportunity Commission in which Plaintiff alleged that the Firm employed 15 or more employees in 2020 and 2021, the relevant calendar years.  *See id.* ¶ 16; *see also* Ex. 17.  Thus, Plaintiff has plausibly pled that the Firm is an employer under Title VII.  Nevertheless, the Firm again erroneously relies on Title VII's employee threshold requirement in connection with its arguments that Plaintiff has failed to state a claim.  *See* ECF No. 37.  However, "the Second Circuit [has] stated that the fifteen-employee requirement of Title VII 'is not a ground for dismissing for failure to state a claim[.]'"  *Rovira v. New York Apparel Sales*, No. 01-cv-2231 (ILG), 2002 WL 1471557, at *2, n. 4 (E.D.N.Y. May 31, 2002) (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 365 (2d Cir. 2000)).  Therefore, the Firm's motion should be denied.

## V.      **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED**

### A.      **Legal Standard**

Summary judgment may not be granted unless the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(a).  "[T]he burden is upon the moving party to demonstrate the absence of any material factual issue genuinely in dispute."  *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975).  The "court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion."  *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 249 (2d Cir. 1985).

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial."  *Danzer v. Norden Sys.,*

*Inc.*, 151 F.3d 50, 54 (2d Cir. 1998).  The trial court "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.   **Defendant was an Employer Under Title VII in 2020 and 2021**

Discovery has shown that Defendant was an employer under Title VII in 2020 and 2021.[5] Under Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]").  42 U.S.C. § 2000e(b).  Discovery has shown that Defendant employed 14 employees for 33 weeks in 2020 and 14 or more employees in 21 weeks in 2021.  *See* 56.1 ¶¶ 6; *see also* Exs. 11 at 6-10 (Responses to Interrogatory Nos. 7-12); 12 (chart summarizing employees' start and end dates reflected in Defendant's responses to Interrogatory Nos. 7-12);[6] 13 (chart demonstrating that Defendant employed 14 employees for 33 weeks in

---

[5] While discovery has shown that the Title VII employee threshold was met in both 2020 and 2021, Plaintiff is able to maintain her Title VII claims if the threshold was met in either 2020 or 2021. *See* 42 U.S.C. § 2000e(b) (defining "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks **in the current or preceding calendar year**.") (emphasis added).

[6] In its Responses to Plaintiff's Interrogatories, Defendant notes gaps in between when certain employees started and ended their employment at the Firm in 2020 or 2021, likely accounting for periods of time where those employees did not work or receive compensation.  *See* Ex. 11 at (Responses to Interrogatory Nos. 11-12).  However, "[t]he test for whether an employer 'has' an 'employee' is whether the employer has an employment relationship with the employee on the day in question, and not whether the employee actually performs work or receives compensation on the day in question." *Frederick v. United Bhd. of Carpenters & Joiners of Am. (UBCJA) Loc. 926*, 558 F. App'x 83, 86 (2d Cir. 2014); *see also Widman*, 2015 WL 13766325, at *6 (denying defendant's motion for summary judgment and finding that there were issues of fact concerning whether defendant maintained employment relationships with seasonal employees who did not work for and were not compensate by defendant for extended periods of time).  Therefore, each employee listed in Defendant's Responses to Plaintiff's Interrogatories counts as an employee of the Firm "for each working day after arrival and before departure." *Walters*, 519 U.S. at 211.

2020); 14 (chart demonstrating that Defendant employed 14 or more employees in 21 weeks in 2021). Therefore, the Title VII 15-employee threshold is satisfied if one additional individual was an employee of the Firm in 2020 or 2021. As detailed below, Holt and Tannenbaum were employees of the Firm throughout 2020 and 2021.

Defendant wrongly asserts that the greatest number of employees it employed during any 20-week period in 2020 and 2021 was 12 employees. *See* Def. Br. at 19-20. Initially, the only factual support that Defendant relies on in support of its position are quarterly tax documents reflecting wages paid to employees in 2020 and 2021. *See* Def. Exs. H-O. However, the Supreme Court has rejected compensation-based methods for calculating if and for what period of time an individual is considered an employee for purposes of Title VII. *See Walters*, 519 U.S. at 211 (rejecting a compensation-based approached based on determining the number of days an employee received compensation and finding that "all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when. He is counted as an employee for each working day after arrival and before departure."). As such, Defendant's tax documents clearly reflect wages paid to employees in 2020 and 2021, are unhelpful, and should be disregarded.[7]

Also, Defendant's assertion that the Title VII threshold requirement is only met if the Firm employed 15 or more employees during 20 consecutive weeks is plainly contrary to Title VII's

---

[7] Similarly, the demonstrative chart on page 19 of Defendant's brief should be disregarded because it is based on tax documents that are unhelpful to resolving the Title VII applicability issue. *See supra* p. 16. Additionally, Defendant's demonstrative chart is rife with errors and based on factual assertions that are unsupported by information contained in Defendant's tax documents. For example, Defendant's chart lists the number of employees who the Firm paid wages to in each month of 2020 and 2021. *See* Def. Br. at 19. However, Defendant's tax documents do not include a breakdown of the number employees on payroll by month. *See* Def. Exs. H-O. Instead, Defendant's tax documents list employees who were paid wages in each quarter of 2020 and 2021. *See id.* Thus, Defendant' demonstrative chart is not only unhelpful but unreliable.

statutory text and case law.  *See* 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day ***in each of twenty or more calendar weeks*** in the current or preceding calendar year[.]") (emphasis added); *see also Parks v. Woodbridge Golf Club, Inc.*, No. 11-cv-0562, 2016 WL 8716606, at *4 (E.D. Pa. July 22, 2016) (rejecting defendants' contention that there is a "consecutive" element related to Title VII's twenty week requirement); *Pawlowski v. Scherbenske*, 891 F. Supp. 2d 1077, 1087 (D.S.D. 2012) ("[T]he 20 weeks need not be consecutive.").  As such, Plaintiff can satisfy the Title VII number of employees threshold requirement as long as Defendant employed 15 or more employees during 20 weeks in 2020 or 2021, regardless of whether those weeks were consecutive.

As noted above, discovery has shown that Defendant employed 14 employees for 33 weeks in 2020 and 14 or more employees in 21 weeks in 2021.  *See supra* p. 15.  Because Holt and Tannenbaum were employees of the Firm in 2020 and 2021, Defendant was an employer under Title VII for those years.

### i.      Oscar Holt was an Employee of the Firm in 2020 and 2021

The Firm is an employer under Title VII because Holt, an attorney at the Firm from April 2018 through the present, was the Firm's employee in 2020 and 2021.  Title VII defines "employee" as "any individual employed by an employer."  42 U.S.C. § 2000e(f).  The "common law of agency governs the meaning of 'employer' and 'employee' in Title VII."  *Felder v. United States Tennis Ass'n,* 27 F.4th 834, 843 (2d Cir. 2022) (citing *United States v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004)).  "This means that [courts] apply a set of non-exhaustive factors set forth by the Supreme Court that, when present, may indicate the existence of an employer-employee relationship under the common law." *Id.* (citations omitted).

"These factors include:  [1] The hiring party's right to control the manner and means by which the product is accomplished; [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in the business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party."  *Id.* (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989)).

"Broadly, these factors examine whether the alleged employer 'paid the employees' salaries, hired and fired them, and had control over their daily employment activities,'[] and the crux of these factors is 'the element of control.'" *Id.* (quoting *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015).

"[The Second Circuit has] emphasized that courts applying the *Reid* factors 'should not ordinarily place extra weight on the benefits and tax treatment factors and should instead place special weight on the extent to which the hiring party controls the 'manner and means' by which the worker completes [his] assigned tasks.'" *Foresta v. Centerlight Cap. Mgmt., LLC*, 379 F. App'x 44, 46 (2d Cir. 2010) (quoting *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 117 (2d Cir. 2000).

The *Reid* factors overwhelming support a finding that Holt was an employee in 2020 and 2021.

First, Holt has been an attorney at and worked for the Firm since April 2018, when Brewington hired him.  *See* Exs. 1 ("Mr. Holt will be joining our office as a member of the legal

staff in an of counsel role."), 2 ("It is with a great amount of excitement that we announce that Attorney Oscar Holt Ill has joined The Law Offices of Frederick K. Brewington as a member of the legal staff in an of counsel role… His joining our office is and will enhance the work of the firm in many ways."), 3 ("Brewington Tr.") at 131:15-23 (admission that Holt worked for the Firm in 2020 and 2021.  At the time Holt was hired, Brewington made it clear that Holt was winding down his private practice to focus on his work for the Firm.  *See* Ex. 1 ("He is a very experienced trial lawyer and, while limited, he will continue to maintain his private practice of law.").

During his over four and a half years working at the Firm, Holt has worked on the Firm's criminal defense cases as well as actions related to the Firm's other practice areas.  *See* Exs. 1 ("[Holt's] area of specialty most recently has been criminal defense, but he is eager to learn more about other aspects of our work."); 2 ("[Holt's] area of specialty most recently has been criminal defense, but he is expanding his work to match the other aspects of the work of the office.").  The Firm also dedicates an entire webpage to Holt and holds Holt out to the public as an attorney of the Firm.  *See* Ex. 4.  Additionally, on his New York State Unified Court System profile, Holt lists the Firm as his employer.  *See* Def. Ex. R.  Further, Defendant has prominently listed Holt on the Firm's letterhead for years.  *See, e.g.*, Ex. 5.

Second, Brewington has exerted significant control over Holt since Brewington hired him in April 2018.  Just like every other employee, Holt was required to and typically did work in the office Mondays through Fridays.  *See* 56.1 ¶¶ 6-7.  On most workdays, Holt began work around 10:00 a.m. and finished around 5:00 p.m.  *See id.*  Also, Holt was required to and did attend weekly calendar meetings every Friday.  *See id.*  During the Firm's weekly calendar meetings, Plaintiff would discuss details from intakes calls she conducted with potential clients of the Firm.  *See id.*  Next, Brewington would assign Holt, other attorneys, and legal staff to specific cases the Firm

decided to take on.  *See id.*  Typically, Brewington assigned any criminal cases the Firm was taking on to Holt.  *See id.*  Also during the weekly calendar meetings, the Firm's staff discussed the Firm's pending cases and any upcoming deadlines.  *See id.*  In connection with those discussions, Brewington would often instruct Holt and the other attorneys to attend specific court conferences. *See id.*

Third, Holt has regularly made appearances on behalf of the Firm in cases, including during cases filed in 2020 and 2021, demonstrating that he is much more than an aimless volunteer and actually an active member of the Firm's legal staff.  *See* Ex. 7.

Fourth, the Firm required Holt to sign a Sexual Harassment Policy Receipt and Acknowledgement Form, which is specifically related to a New York State law mandating sexual harassment training for employees.  *See* Ex. 6; *see also* N.Y. Lab. Law § 201-g(2)(c) ("Every employer shall utilize the model sexual harassment prevention training program pursuant to this subdivision or establish a training program for employees to prevent sexual harassment that equals or exceeds the minimum standards provided by such model training.").

Finally, the Firm provided Holt with instrumentalities and tools to complete his work.  In 2020 and 2021, Holt occupied an office across from a conference at the Firm that was assigned to him by Brewington.  *See* 56.1 ¶¶ 6-7; *see also* Ex. 1 ("Mr. Holt, [sic] will be occupying the office directly across from conference room 2.").  Since Brewington hired Holt in 2018, the Firm has provided Holt with a Firm email address.  *See, e.g.*, Def. Ex. R.  The Firm also provided and continues to provide Holt with legal staff to assist him with his work for the Firm.  *See* 56.1 ¶¶ 6-7; *see also* Ex. 1 ("I ask you to join me in welcoming him and encourage you to provide him with your full support and assistance as he learns more about what and how we do things in the office.").  Indeed, during her employment with the Firm, Plaintiff was usually assigned to work on the Firm's

criminal cases with Holt.  *See* 56.1 ¶¶ 6-7.  Even though Holt regularly receives assistance from the Firm's support staff, the Firm has not produced any evidence that Holt had any role in the hiring and paying of assistants.

### ii.    Steven Tannenbaum was an Employee of the Firm in 2020 and 2021

Based on the Reid factors outlined above, it is clear the Tannenbaum was an employee of the Firm in 2020 and 2021.

Tannenbaum worked as an attorney for the Firm during Plaintiff's employment.  *See* 56.1 ¶¶ 6, 9.  During that time, Tannenbaum handled all of the Firm's medical malpractice cases.  *See id.*  Indeed, Brewington directed Plaintiff to discuss all potential medical practice cases with Tannenbaum.  *See id.*  In connection with that instruction, Plaintiff would contact Tannenbaum and relay information she obtained during intake calls for prospective medical malpractice matters.  *See id.*  Tannenbaum then decided whether or not the Firm should take the prospective cases.  *See id.*  Plaintiff was then required to consult Brewington so that he could sign off on Tannenbaum's decision.  *See id.*

While Plaintiff was employed at the Firm, Tannenbaum handled several medical malpractice cases, including cases related to Gail Robinson-Lee and Melvin Bloom, and Plaintiff was assigned to assist Tannenbaum with those cases.  *See id.*  Plaintiff spoke with Tannenbaum almost every day about the cases they worked on together.  *See id.*  During those conversations, Tannenbaum directed Plaintiff to complete assignments and tasks.  *See id.*

In connection with his work on medical malpractice cases for the Firm, Tannenbaum worked out of Defendant's office at least two days per week during Plaintiff's employment.  *See id.*  When Tannenbaum worked at Defendant's office, Tannenbaum and Plaintiff would meet in a conference room to go over various assignments and discuss the status of their cases.  *See id.*

Defendant compensated Tannenbaum for the work he performed for the Firm.  Indeed, during a telephone call between Tannenbaum and Plaintiff in 2021, Tannenbaum complained to Plaintiff that Brewington owed him $1,000 in connection with work that Tannenbaum completed on the Melvin Bloom matter.  *See id.*  Of course, Tannenbaum would not have made such a complaint if he had not come to an agreement with Brewington concerning compensation for the work he performed for the Firm.

For the forgoing reasons, the *Reid* factors show that Holt and Tannenbaum were employees of the Firm in 2020 and 2021.  As a result, Defendant employed 15 or more employees in 2020 or 2021 and is an employer under Title VII.

Despite clear evidence that Holt and Tannenbaum were Defendant's employees in 2020 and 2021 pursuant to the *Reid* factors (*see supra* pp. 17-22), Defendant claims that Holt was not an employee of the Firm.  *See* Def. Br. at 20-21.  Instead, Defendant disingenuously asserts that Holt was an unpaid volunteer.  *See id.*  Indeed, Defendant vaguely asserts that "[Holt's] participation is neither expected, required, nor mandated."  Def. Br. at 20.  Defendant goes on to state that Holt's work for the Firm is limited to "periodically provid[ing] help to mentor, role model and fellowship[]" and that he "enhances the work of the [F]firm in many ways."  However, Defendant has failed to provide any admissible evidence to support their assertions or to even explain what Holt's "participation" has been over the past four and half years, how he has supposedly provided "mentor, role model, and fellowship[,]" or how he has "enhanced" the Firm in "many ways."

Similarly, Defendant claims that Holt "provides services to the Law Firm on a voluntary basis, he comes and goes as he pleases, the Law Firm has no right and does not control or direct any volunteer services he performs[]" and did not receive any benefits for his four and a half years

21

of work.  *Id.*  Again, Defendant does not provide any support for its claim.  There is nothing in the record related to the terms and conditions of Holt's relationship with the Firm or any negotiations concerning same.  Defendant does not provide any factual support demonstrating what the supposed "volunteer services" Holt has allegedly donated to the Firm.

Defendant's supposed factual assertions concerning Holt are disputed by the record.  Specifically, for the last four and half years, Defendant has marketed, represented, and described Holt as a full-time attorney, not as an unpaid volunteer.  *See* 56.1 ¶¶6-7; *see also* Exs. 1 (welcome memorandum touting Holt as a member of the legal staff and stating that Holt's "presence will help to increase [the Firm's] legal capacity on numerous levels, including evaluation of cases (legally and factually), in[-]house instruction and case and trial preparation."); 2 (welcome email boasting about Holt joining the legal staff and stating "[Holt] joining out office is and will enhance the work of the firm in many ways."); 4 (webpage dedicated to Holt representing that he handles criminal defense and other cases and failing to mention anything about him being a supposed volunteer), 5 (correspondence prominently listing Holt on the Firm's letterhead alongside the Firm's other attorneys who Defendant concedes are employees), 6 (Holt's Sexual Harassment Policy Receipt and Acknowledgement Form, which is specifically related to a New York State law mandating sexual harassment training for employees).  Tellingly, none of Defendant's documents describe Holt as a volunteer.  The record is clear that Holt was an employee in 2020 and 2021.

Also, the record refutes Defendant's contention the Firm does not have any control over Holt and that he allegedly "comes and goes as he pleases."  Documents demonstrate that Defendant required Holt to "help [] increase [the Firm's] legal capacity on numerous levels, including [with] evaluation of cases (legally and factually), in[-]instruction and cases and trial preparation."  Ex. 1.  Defendant also required Holt to "learn[] more about what and how we do things in the office."  *Id.*

Additionally, Defendant (i) controlled Holt's schedule, (ii) required him to attend weekly calendar meetings and court conferences, (iii) mandated that he handle all of the Firm's criminal cases and work on cases concerning the Firm's other practice areas, (iv) provide input and make decisions about whether or not to retain a prospective criminal defense client, and (v) set retainer fee amounts for the Firm's criminal defense clients.  *See* 56.1 ¶¶ 6-7.

Additionally, Defendant compensates alleged volunteers such as Holt and Tannenbaum. *See* 56.1 ¶¶ 6-7, 9.  Indeed, during a telephone call in 2021, Tannenbaum complained to Plaintiff that Brewington owed him $1,000 in connection for work he completed on the Melvin Bloom matter.  *See id.* ¶¶ 6, 9.

Defendant makes similarly bald and unsupported factual assertions related to Tannenbaum. Defendant does not deny Tannenbaum worked for the Firm in 2020 or 2021.  *See* Def. Br. at 21; *see also* 56.1 ¶¶ 6, 9.  Rather, without providing any evidentiary support, Defendant claims that the Firm did not provide any compensation or benefits to Tannenbaum for the work he performed for the Firm.  *See* Def. Br. at 21.  However, as noted above, Tannenbaum specifically complained to Plaintiff about Defendant failing to pay him $1,000 for his work on the Melvin Bloom matter. *See* 56.1 ¶¶ 6, 9.  Clearly, Defendant compensated Tannenbaum.

Defendant's conclusory assertions that are unsupported by the evidentiary record whatsoever alone warrant denial of its motion.  Even if Defendant's assertions were supported by the evidentiary record, which they are not, Plaintiff has demonstrated numerous disputes of material facts that go directly to issue of whether Defendant was a Title VII employer in 2020 or 2021.  Therefore, Defendant's motion should be denied.

C.    **Plaintiff is Entitled to Additional Discovery Related to the *Reid* Factors**

As outlined above, the *Reid* factors show that Holt and Tannenbaum were employees of the Firm in 2020 and 2021, and that the Firm is an employer under Title VII.  *See supra* pp. 17-24.  However, if the Court finds otherwise, Plaintiff respectively requests the opportunity to engage in limited and targeted additional discovery under FRCP 56(d).

"Before granting summary judgment, the non-movant 'must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.'" *Katz v. Adecco USA, Inc.*, No. 11-cv-2540 (HB)(AJP), 2011 WL 2436670, at *1 (S.D.N.Y. June 16, 2011) (quoting *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000)). Indeed, "[t]he Second Circuit has held that summary judgment may be premature prior to an adequate opportunity for discovery." *Id.* (citing *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995) and *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir.1995)).

"FRCP 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion."  *Id.* at *2 (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,* 271 F.3d 374, 386 (2d Cir.2001) and citing *Sereika v. Patel,* 411 F. Supp. 2d 397, 405 (S.D.N.Y.2006) (denying the defendants' motion for summary judgment without prejudice and granting the defendants leave to renew their motion after relevant discovery has been completed).

"A party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit [or declaration] showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to

create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why

the affiant was unsuccessful in those efforts," *Id.* (quoting *Gurary v. Winehouse,* 190 F.3d 37, 43

(2d Cir. 1999); *see also* FRCP 56(d)(2) ("If a nonmovant shows by affidavit or declaration that,

for specified reasons, it cannot present facts essential to justify its opposition, the court may…[]

allow time to obtain affidavits or declarations or to take discovery.").

As demonstrated above and in counsel's declaration, Plaintiff has shown that all of the

above-referenced factors weigh in favor of granting her request for additional limited discovery.

Specifically, Defendant has frustrated discovery related to the *Reid* factors, particularly in

connection with the Firm's claim that Holt and Tannenbaum are volunteers or independent

contractors.  *See* Crabill Decl. ¶¶ 20-41.  Also, as discovery related to Defendant's status as an

employer under Title VII unfolded, it became clear that whether Holt and Tannenbaum are

considered employees for purposes of Title VII would be determinative.  *See id.*  However,

Plaintiff was limited to one three-hour FRCP 30(b)(6) deposition of Defendant prior to engaging

in document discovery.  *See id.* ¶ 31.  Plaintiff did not have an opportunity to depose Holt or

Tannenbaum, the alleged volunteers or independent contractors. *See id.* ¶¶ 20-41.

As such, additional limited discovery is warranted.  *See Foresta v. Centerlight Cap. Mgmt.*,

LLC, 379 F. App'x 44, 46 (2d Cir. 2010) (finding that the "District Court erred in granting

summary judgment without first permitting plaintiff to take additional discovery" and permitting

plaintiff depositions of defendants and individuals whose employment status was in dispute where

"evidence produced quickly revealed that the determinative question was whether certain

individuals were independent contractors or "employees."); *see also Carmona v. Toledo*, 215 F.3d

124, 133 (1st Cir. 2000) (reversing summary judgment where "the supervisors' responses to

plaintiffs' discovery requests appear to have been meager, untimely, and incomplete"); *Ogden v.*

*Patriot Mun. Util.*, No. 4:13-cv-00072 (SEB), 2014 WL 4722606, at *5 (S.D. Ind. Sept. 22, 2014) ("Plaintiff argues that George Miller and Stephanie Adkins were Town of Patriot employees and should be included in the total number of Town employees for purposes of Title VII. [] Defendants disagree because George Miller and Stephanie Adkins are not included in the Town's payroll records. [] Both parties will have a full and fair opportunity to present their cases if Plaintiff is allowed to depose these individuals or otherwise conduct discovery related to these individuals' relationships with Defendants."); *Holcombe v. Advanced Integration Tech.*, No. 4:17-cv-522, 2018 WL 4908266, at *3 (E.D. Tex. Oct. 10, 2018) ("Forcing Holcombe to respond to a summary judgment before he had an opportunity to review or to depose Defendants' witnesses about these documents would be unjust… reward Defendants for their refusal to timely produce documents in response to highly relevant discovery requests[.]").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion for summary judgment in its entirety.

Dated: October 20, 2023　　　　　　　　**FARUQI & FARUQI, LLP**
　　　　New York, New York

　　　　　　　　　　　　　　　　　　By: */s/ Taylor J. Crabill*
　　　　　　　　　　　　　　　　　　　　Taylor J. Crabill

　　　　　　　　　　　　　　　　　　685 Third Avenue, 26th Floor
　　　　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　　　　Tel: 212-983-9330
　　　　　　　　　　　　　　　　　　Fax: 212-983-9331
　　　　　　　　　　　　　　　　　　tcrabill@faruqilaw.com

　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*