**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Dana-Simone Williams,<br><br>                              Plaintiff,<br><br>         -v-<br><br>The Law Offices of Fredrick K. Brewington, Fredrick K. Brewington, *in his individual and professional capacities*, and Precilla Lockett, *in her individual and professional capacities*,<br><br>                              Defendants. | 2:22-cv-00983<br>(NJC) (AYS) |

<u>**MEMORANDUM AND ORDER**</u>

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Dana-Simone Williams ("Williams") brings this action against Defendants the Law Offices of Fredrick K. Brewington ("the Firm"), Fredrick K. Brewington ("Brewington"), and Precilla Lockett ("Lockett" and collectively "Defendants") pursuant to Title VII of the Federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"). Williams claims that, during the course of her employment at the Firm as a legal assistant, she was subjected to sexual harassment, retaliation, and discriminatory termination. (*See generally* Am. Compl., ECF No. 17.) Before the Court is Defendants' Motion for Summary Judgment ("Motion"), which moves to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., and moves for summary judgment pursuant to Rule 56, Fed. R. Civ. P., on the basis that the Firm is not an "employer" under Title VII. (*See* Mot., ECF No. 46.)[1]

---

[1] Plaintiff asserts Title VII claims only against the Firm and not against Brewington or Lockett. (*See* Am. Compl. ¶¶ 202–17.)

For the reasons discussed below, the portion of Defendants' Motion arguing for dismissal is denied as moot and the portion of the Motion arguing for summary judgment is denied due to the existence of numerous material questions of fact concerning whether the Firm has the required number of employees for Title VII to apply to Williams's claims.

## BACKGROUND

Williams was employed as a legal assistant by the Firm from July 23, 2019 until her termination on June 14, 2021. (Am. Compl. ¶ 20; Mot. Ex. A, C.) Williams claims that she was sexually harassed "by multiple male employees, one of whom not only stalked and harassed her, but also harassed, assaulted, and raped one of her colleagues." (Am. Compl. ¶ 42.) Williams brings various claims against Defendants under Title VII and the NYSHRL, including claims of sexual harassment, discriminatory termination, and retaliation, as well as claims of aiding and abetting sexual harassment, discriminatory termination, and retaliation against Brewington and Lockett. (*Id.* ¶¶ 104, 113–14, 167–95.)

Williams commenced this action on February 23, 2022, and filed an Amended Complaint on May 31, 2022. (ECF Nos. 1, 17.) The Amended Complaint alleges that "[a]t all relevant times, the Firm was Plaintiff's 'employer' within the meaning of all relevant statutes and regulations." (Am. Compl. ¶ 23.) It also alleges that Williams filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which asserted that the Firm employed fifteen or more employees in 2020 and 2021, a time period that includes the calendar year in which Williams was terminated and the prior calendar year. (*Id.* ¶ 16; Pl.'s Opp'n at 13, ECF No. 47; Pl.'s Opp'n Ex. 17.)

Defendants filed an Amended Answer to the Amended Complaint on August 5, 2022. (ECF No. 24.) On August 8, 2022, Magistrate Judge Anne Shields directed parties to conduct discovery concerning whether the Firm "is an 'employer' as defined by Title VII . . . ." (Elec.

Order, Aug. 8, 2022.) Following discovery, on July 11, 2023, Defendants filed a letter requesting

a pre-motion conference concerning their anticipated motion to dismiss the Amended Complaint

under Rules 12(b)(1) and 12(b)(6). (ECF No. 37.) Plaintiff responded to the letter. (ECF No. 38.)

District Judge Gary Brown, to whom this case was previously assigned, issued an order

scheduling a pre-motion conference on Defendants' anticipated motion to dismiss under Rules

12(b)(1) and 12(b)(6) for August 21, 2023. The scheduling order stated:

> The parties are on notice that in appropriate cases, the pre-motion letter and the response,
> along with the parties' arguments made at the pre-motion conference, may be construed
> at the discretion of the Court as the motion itself. Arguments not raised in the pre-motion
> letters or during the pre-motion conference shall be deemed waived. See In re Best
> Payphones, Inc., 450 F. App'x 8, 15 (2d Cir. 2011).

(Elec. Order, July 12, 2023.)

At the conference, Defendants argued that the Court should dismiss the Amended

Complaint because Williams had failed to allege that the Firm had fifteen or more employees as

required for Title VII to apply. (ECF No. 41 4:22–5:15.) Williams reported that the parties had

substantially completed discovery related to the question of whether the Firm is subject to Title

VII, but argued that Defendants failed to produce relevant documents and that there are questions

of fact as to whether the Firm is a Title VII "employer." (*Id.* 4:5–16.) The Court deemed

Defendants' motion to dismiss made and denied it, stating: "[T]o the extent the defendant is

moving on the grounds that the—the specific allegation in the complaint about the 15 employees,

I'm denying that motion because at best I would simply let the plaintiff amend to include that

allegation." (*Id.* 5:16–20.) The Court set a briefing schedule for Defendants' anticipated Rule 56

motion for summary judgment on whether Defendants qualify as Title VII "employers."

 (*Id.* 5:5–20.)

In violation of the Court's order, Defendants filed a combined motion to dismiss the Amended Complaint under Rules 12(b)(1) and (b)(6) and Motion for Summary Judgment under Rule 56. (Mot.) In support, Defendants provided, among other things, a sworn declaration from Brewington (Brewington Decl., ECF No. 46-2), a copy of Williams's Offer of Employment (Mot. Ex. A, ECF No. 46-3), a copy of the Firm's Employee Handbook and Personnel Policies (Mot. Ex. B, ECF No. 46-3), a copy of Williams's Memorandum of Termination (Mot Ex. C, ECF No. 46-3), Defendants' Response to Plaintiff's First Set of Interrogatories and Production of Documents Related to Title VII Applicability (Mot. Ex. D, ECF No. 46-3), various status reports to the Court (Mot. Exs. E–G, ECF No. 46-4), the Firm's payroll and tax information for 2020 and 2021 (Mot. Exs. H–O, ECF No. 46-5), and a copy of the New York State Unified Court System Attorney Detail Report about attorneys Oscar Holt III ("Holt") and Steven Tannenbaum ("Tannenbaum") (Mot. Exs. R, V, ECF No. 46-7.)

Plaintiff opposed Defendants' Motion. (Pl.'s Opp'n, ECF No. 47.) In support, Plaintiff provided the following, among other things: a 2018 memorandum from Brewington to "all Office Members" of the Firm announcing that Attorney Oscar Holt III was joining the Firm "as a member of the legal staff in an of counsel role" (Pl.'s Opp'n Ex. 1, ECF No. 47-3), a 2018 email from Brewington to Hank Russell expressing excitement that Holt had joined the Firm (Pl.'s Opp'n Ex. 2, ECF No. 47-4), a screenshot of the Firm's webpage about Holt and his work with the Firm (Pl.'s Opp'n Ex. 4, ECF No. 47-6), Williams's July 2019 offer letter from the Firm which lists Holt at the top as "Of Counsel" to the Firm (Pl.'s Opp'n Ex. 5, ECF No. 47-7), and a sworn declaration from Williams addressing facts related to the work of Holt and Tannenbaum with the Firm (Williams Decl., ECF No. 47-21.)

Defendants filed a reply to Plaintiff's Opposition. (Reply, ECF No. 48.) In support, Defendants provided sworn declarations from attorneys Holt and Tannenbaum, in which each individual attested that they did not serve as employees of the Firm. (Reply Ex. B ("Holt Decl."), ECF No. 48-3; Reply Ex. C ("Tannenbaum Decl."), ECF No. 48-4.)

## DISCUSSION

### I.    This Court has Subject Matter Jurisdiction Over Plaintiff's Claims.

The Court must grant a motion to dismiss under Rule 12(b)(1) if the party asserting subject matter jurisdiction fails to prove, by a preponderance of evidence, that the court has subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Title VII prohibits employers from discriminating against any employee "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Under Title VII, the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, and any agent of such person," subject to certain exceptions inapplicable here. 42 U.S.C. § 2000e(b) ("Section 2000e(b)"). The Supreme Court has established that this "numerical threshold does not circumscribe federal-court subject-matter jurisdiction," but instead "relates to the substantive adequacy of [a] Title VII claim . . . ." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006).

Like they did at the August 21, 2023 pre-motion conference before Judge Brown, Defendants again argue for dismissal of this action under Rule 12(b)(1) on the basis that the Firm did not employ fifteen "or more employees for each working day in each of twenty or more calendar weeks [in 2020 or 2021,] as required" for Title VII to apply to Williams's claims. (*See*

Mot. at 20.) Defendants' Rule 12(b)(1) motion is dismissed as moot and, in the alternative, is denied on the merits.

First, Defendants' Rule 12(b)(1) motion is moot because Judge Brown deemed the motion made and denied at the August 21, 2023 pre-motion conference. (ECF. No. 41 5:16–20.) The Court reasoned that "to the extent the defendant is moving on the grounds that the—the specific allegation in the complaint about the 15 employees," the Court would "simply let the plaintiff amend to include that allegation." (*Id.*) The Court then proceeded to schedule briefing on the anticipated motion for summary judgement, recognizing that the parties' dispute concerning Title VII's applicability centers on questions of fact. (*Id.* 5:5–20.) While the Court did not formally require Williams to file a Second Amended Complaint, the parties' pre-motion conference letters and the discussion at the August 21, 2023 conference demonstrate the parties' understanding that the Court would permit Williams to amend the Amended Complaint to allege that the Firm employed fifteen or more employees for each working day in each of twenty or more calendar weeks in 2020 or 2021—the time period relevant to Williams's Title VII claims.

Second, in the alternative, Defendants' Rule 12(b)(1) motion is denied on the merits because it is well established that a complaint's failure to specifically allege that a defendant meets the numerical threshold for Title VII is *not* a jurisdictional default. *See Arbaugh*, 546 U.S. at 504 ("We reject [defendants' position] and hold that the numerical threshold does not circumscribe federal-court subject-matter jurisdiction. Instead, the employee-numerosity requirement relates to the substantive adequacy of [plaintiff's] Title VII claim."); *see also Pizarro v. Euros El Tina Rest. Lounge & Billiards Corp.*, No. 20 CIV. 5783 (AKH), 2022 WL 484851, at *1 (S.D.N.Y. Feb. 16, 2022) (denying Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction relating to Title VII's numerical threshold); *Hassanein v. Gino's*

*Italian Rest. on 5th*, No. 16-cv 3365(AMD)(ST), 2017 WL 4350515, at *4 (E.D.N.Y. Mar. 27, 2017) ("[T]he threshold number of employees for application of Title VII is an element of a claim for relief, not a jurisdictional issue.").

Defendants' Rule 12(b)(1) motion is therefore dismissed as moot and, in the alternative, denied on the merits.

## II.     Plaintiffs Have Stated a Claim for Title VII Discrimination

Defendants' argument that this Court should dismiss the Amended Complaint for failure to specifically allege that the Firm meets Title VII's numerical threshold is, at best, an argument for dismissal under Rule 12(b)(6) because "the employee-numerosity requirement relates to the substantive adequacy of [Plaintiff's] Title VII claim." *Arbaugh*, 546 U.S. at 504. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks and citation omitted).

Williams has sufficiently pled that the Firm is an "employer" under Title VII for two reasons. First, as discussed above, Judge Brown considered Defendants' Rule 12(b)(6) arguments and Williams's response in the parties' pre-motion letters and concluded the Court would "simply let the plaintiff amend to include [the] allegation" that Defendants' employed

fifteen or more employees for each working day in each of twenty or more calendar weeks in 2020 or 2021, as required for Title VII to apply. (ECF. No. 41 5:16–20.)

Second, even without amendment, the Amended Complaint states a plausible claim that the Firm is an employer covered by Title VII. It alleges that "[a]t all relevant times, the Firm was Williams'ss 'employer' within the meaning of all relevant statutes and regulations." (Am. Compl. ¶¶ 16, 23.) Moreover, Williams's Opposition clarifies that the Amended Complaint incorporates the Charge of Discrimination filed with the Equal Employment Opportunity Commission, which asserts that the Firm employed fifteen or more employees in 2020 and 2021. (Pl.'s Opp'n at 13.) Because Williams has plausibly pled that the Firm is an employer under Title VII, Defendants' Rule 12(b)(6) argument is denied. Notably, even if this Court were to conclude, after review of the factual record outside of the Amended Complaint, that the Firm does not meet the numerical threshold for Title VII, that would not mean Williams failed to state a Title VII claim, but simply that the claim failed on the merits.[2]

### III.   Material Questions of Fact Preclude Summary Judgment on the Question of Whether Defendants are Employers Subject to Title VII.

The parties' dispute centers on whether the Firm meets the numerical threshold for Title VII to apply to Williams's claims. For the reasons discussed below, the record gives rise to numerous material questions of fact as to whether the Firm had the requisite number of employees during either 2020 or 2021—the years relevant to Williams's Title VII claim against the Firm. More specifically, Defendants' responses to Williams's interrogatories and evidence in the record create numerous questions of fact as to whether Holt and/or Tannenbaum were unpaid volunteers or employees for the purpose of Title VII. Defendants thus fail to show that the

---

[2] *See Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 365 (2d Cir. 2000) (concluding that plaintiff's "ultimate failure to prove single employer status is not a ground for dismissing for lack of subject matter jurisdiction or even for failure to state claim; it is a ground for defeating her federal claim on the merits.").

undisputed record establishes that the Firm does not meet the numerical threshold for Title VII to apply.

A Title VII defendant may seek summary judgment under Rule 56, on the basis that the undisputed facts in the record do not establish that it meets the numerical threshold to qualify as an "employer" for Title VII coverage. *Da Silva*, 229 F.3d at 366. Summary judgment may only be granted where the parties' submissions, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material fact question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view all facts in the light most favorable to the non-moving party. *Overton v. N.Y. State Div. of Military & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial, and cannot rest on "[m]ere conclusory allegations or denials" of the movant's pleadings. Fed. R. Civ. P. 56(c); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." *Ridinger v. Dow Jones & Co. Inc.*, 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted).

The common law of agency governs the meaning of "employer" and "employee" in Title VII cases. *United States v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004). To determine whether an employer-employee relationship exists with respect to so-called "independent contractors," the Court considers the non-exclusive factors set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), which include:

> The hiring party's right to control the manner and means by which the product is accomplished . . . ; the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party.

*Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) (quoting *Reid*, 490 U.S. at 751–52) (brackets omitted); *see also Jones v. Mega Fitness*, No. 94CIV.8393, 1996 WL 267941, at *3 (S.D.N.Y. May 21, 1996) (considering the *Reid* factors to determine whether independent contractors were Title VII employees). The Second Circuit has also applied three *Johnson & Higgins* factors to determine whether a person holding a higher-level executive position is an "employee" for purposes of the anti-discrimination laws, namely: "(1) whether the executive has undertaken traditional employee duties; (2) whether the executive was regularly employed by a separate entity; and (3) whether the executive reported to someone higher in the hierarchy." *Frederick v. United Bhd. of Carpenters Loc. 926*, 558 F. App'x 83, 85 (2d Cir. 2014) (citing *E.E.O.C. v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1539 (2d Cir. 1996) (brackets omitted); *Drescher v. Shatkin*, 280 F.3d 201, 203–04 (2d Cir. 2002). There are questions of fact as to whether an individual is a Title VII employee of an entity when the entity's leader had "the authority to schedule meetings" with the individual, to require that individual to attend meetings, to "determine [the] individual's eligibility to become an officer," and to "remove [the individual] . . . for poor attendance," and when the individual assisted with leadership's discharge of duties. *Frederick*, 558 F. App'x at 85; *see also id.* at 85–86 (applying the *Johnson & Higgins* factors to reverse district court ruling that union officers and delegates were not Title VII employees).

The parties dispute whether the Firm had fifteen employees for each working day of at least twenty weeks during either 2020 or 2021, the calendar years relating to Williams's claims.[3] Each party has compiled a chart purporting to set forth information produced by Defendants in discovery concerning the number of employees at the Firm during these two years, but these charts provide conflicting information and are organized according to different units of time. (*Compare* Mot. at 19 *with* Pl.'s Opp'n Exs. 12–14.) While Defendants' chart is organized by yearly quarters and months, Williams's charts are organized by week. (*Compare* Mot. at 19 *with* Pl.'s Opp'n Exs. 13, 14.) The parties also rely on different discovery produced by Defendants to create their competing charts. While Defendants rely on tax documents and payroll reports (*see* Mot. at 19), Williams relies on Defendants' responses to two specific interrogatories: Interrogatory Number 11, which asked Defendants to "[i]dentify each and every person or employee who worked at the Firm in 2020 and his or her dates of employment," and Interrogatory Number 12, which asked Defendants to "[i]dentify each and every person or employee who worked at the Firm in 2021 and his or her dates of employment." (Pl.'s Opp'n Ex. 11 at 7, 9.)

Based on their chart, Defendants assert that "the greatest number of people on [the Firm's] payroll during any 20 week period in 2020 and/or 2021 is 12 persons." (Mot. at 19.) Defendants subsequently contradict that assertion in their Reply brief, where they state that thirteen employees worked at the Firm in 2020 and twelve employees worked at the Firm in 2021. (Reply at 8.) Defendants further argue that attorneys Holt and Tannenbaum were not "employees" of the Firm in either 2020 or 2021, and thereby cannot be counted when determining whether the Firm met Title VII's numerical threshold in either year. (*Id.* at 3–4.)

---

[3] Williams's claims concern Defendants' alleged conduct between 2019 and 2021. (*See generally* Am. Compl.)

11

Williams asserts that, based on Defendants' responses to Interrogatory Numbers 11 and 12, the Firm had fourteen employees for more than twenty weeks in both 2020 and 2021, and that because Holt and Tannenbaum were Title VII employees during that time, rather than unpaid volunteers, the Firm had at least fifteen employees for each working day in each of twenty or more calendar weeks in 2020 or 2021 as required for Title VII to apply. (Pl.'s Opp'n at 4; *id.* Ex. 11 at 8–9.) Williams's charts simply assert that there were a specific number of employees at the Firm for each work week in 2020 and 2021, but do not identify which specific individuals are included in those figures, do not explain how Williams used Defendants' responses to Interrogatories 11 and 12 to develop the chart, and do not explain how the information in the chart comports with or differs from the employee names and dates in Defendants' charts. (*Id.*) Because Williams has not explained how the information from Defendants' responses to Interrogatories 11 and 12 were used to create the charts, the Court is unable to verify that Williams's charts present an accurate picture of the undisputed facts demonstrating the number of Title VII employees at the Firm for each week in 2020 and 2021.

Part of the conflict between the parties' charts stems from Defendants' interpretation of Section 2000e(b), which sets forth Title VII's numerical threshold. Defendants compile their charts based on the assumption that under the statute, an individual only counts as a Title VII employee for a given calendar year if they worked twenty or more "consecutive" weeks at the Firm that year. (*See* Reply at 1.) According to Defendants, five people who worked at the Firm in 2020 (Alain Aliscia, Gulfam Dhillon, Alexis Epstein, Kristina Negri, and Cobia Powell) and three people who worked at the firm in 2021 (Alexis Epstein, Itohen Ihaza, Ashley Johnson) do not count toward the Firm's Title VII numerical threshold because they "[d]id not work any *consecutive* 20-week time period." (Reply at 6–9 (emphasis supplied); *id.* Ex. A.) Defendants

further argue that two people who worked at the Firm in 2021 (Cobia Powell and Dennis Swanson) only count as employees under Title VII for the period of time when they worked twenty or more consecutive weeks, but not for other non-consecutive weeks of the year when they worked at the Firm.[4]

Defendants' interpretation of Section 2000e(b) is unpersuasive and, consequently, their charts are inaccurate. The plain text of Section 2000e(b) does not include the word "consecutive" when defining a Title VII employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day *in each of twenty or more calendar weeks in the current or preceding year*, and any agent of such person." 42 U.S.C. § 2000e(b) (emphasis supplied). Nor do Defendants identify any caselaw interpreting Title VII that reads the phrase "in each of twenty or more calendar weeks" to require those weeks to run consecutively.

Due to Defendants' incorrect interpretation of Section 2000e(b) and the lack of explanation for how Williams created her competing charts, the Court created charts, attached as Appendix A and B, which set forth the name of each individual identified by Defendants as employed at the Firm and the specific weeks during 2020 and/or 2021 during which they were employed, based on Defendants' responses to Interrogatories No. 11 and No. 12. Because Title VII's numerical threshold requires establishing that fifteen or more employees worked at the Firm for each working day for *at least twenty weeks* in 2020 or 2021—a timeframe set forth in *weeks* not months, as presented in Defendants' chart (*see* Mot. at 19)—the Court's charts are organized by weeks. *See* Appendix A & B.

---

[4] For example, Defendants argue that Cobia Powell's work for the Firm from January 4, 2021 through January 22, 2021 does not count toward the Firm's Title VII numerical threshold during those weeks of the year because that timeframe does not constitute at least twenty weeks, even though Defendants concede that Powell was a Title VII employee at the Firm from August 2, 2021 through December 31, 2021. (Reply Ex. A at 3.)

Based on Defendants' response to Interrogatory No. 11, there are seven weeks in 2020 when the Firm had fifteen employees, eight weeks when the Firm had at least fourteen employees, and eighteen weeks when the Firm had at least thirteen employees. *See* Appendix A. Based on Defendants' response to Interrogatory No. 12, there were three weeks in 2021 when the Firm had eighteen employees, twelve weeks when the Firm had fourteen employees, and twenty-three weeks when the Firm had thirteen employees. *See* Appendix B.

In order to defeat summary judgment, Williams must show just one genuine question of material fact as to whether the Firm employed fifteen individuals for twenty weeks in *either* 2020 *or* 2021 to meet the numerical threshold for Title VII. Fed. R. Civ. P. 56(a); *see Da Silva*, 229 F.3d at 366. Based on Defendants' own responses to Interrogatories Nos. 11 and 12, it is undisputed that there are thirty-three weeks in 2020 and thirty-eight weeks in 2021 when the Firm had thirteen employees. Therefore, summary judgment is unwarranted if the record demonstrates a genuine question of fact as to whether both Holt and Tannenbaum were employees in either 2020 or 2021.[5] To be clear, Williams need not show that the Firm met Title VII's numerical threshold in both 2020 *and* 2021. She simply must show a genuine question of fact as to whether the Firm met the fifteen-employee threshold during twenty weeks of either year.

---

[5] To break it down more specifically, because it is undisputed that the Firm had fifteen employees for seven weeks in 2020, summary judgment is unwarranted if the record demonstrates a genuine question of fact as to whether *either* Holt *or* Tannenbaum was an employee during the eight weeks of 2020 when the Firm had fourteen employees, and as to whether *both* Holt and Tannenbaum were employees during any five of the eighteen weeks in 2020 when the Firm had at least thirteen employees. Similarly, because it is undisputed that the Firm had eighteen employees for three weeks in 2021, summary judgment is unwarranted if the record shows a question of fact as to whether *either* Holt *or* Tannenbaum was an employee during the twelve weeks of 2021 when the Firm had fourteen employees, and as to whether *both* Holt and Tannenbaum were employees during any five of the twenty-three weeks in 2021 when the Firm had at least thirteen (13) employees.

A. Genuine Questions of Material Fact Exist as to Whether Holt is an "Employee" under Title VII in 2020 and 2021.

The parties dispute whether Holt was an employee of the Firm for purposes of Title VII in 2020 and 2021. (Mot. at 20; Pl.'s Opp'n at 16–20.) Holt is an attorney with more than forty years of experience and has worked on a number of cases handled by the Firm. (Mot. at 20; Pl.'s Opp'n at 16–20.) Holt himself attests that he was not an employee of the Firm, was not paid a salary by the Firm, and that his role at the Firm was limited. (Holt Decl. ¶ 4.) Defendants assert that Holt worked on a voluntary basis as "Of Counsel to the Law Firm" during 2020 and 2021, that the Firm did not compensate him with a salary, wages, or benefits, and that Holt was not expected, required, or mandated to participate in the Firm's work. (Mot. at 20–21.) Holt attests that he only came into the Firm's office three days a week—but was never expected to come in on any given day, that he regularly attended weekly Firm staff meetings for his own benefit and not because he was required to do so, that the Firm's cases were never assigned to him, and that he simply chose to assist the Firm with some criminal cases. (Holt Decl. ¶¶ 13–15.)

Williams argues that the Firm has held Holt out as an employee since April 23, 2018, pointing to numerous pieces of evidence in the record. (Pl.'s Opp'n at 4.) An April 23, 2018 memorandum from Brewington to "All Office Members" of the Firm announced: "Mr. Holt will be joining our office *as a member of the legal staff* in an of counsel role." (Pl.'s Opp'n Ex. 1 (emphasis supplied).) The memorandum further explained that as an "of counsel," Holt has "a close personal, continuous, and regular relationship" with the Firm as per the American Bar Association's Formal Opinion 90-357 defining the "of counsel" role. (*Id.*) An April 23, 2018 email from Brewington to Hank Russell similarly stated: "It is with a great amount of excitement that we announce that Attorney Oscar Holt III has joined The Law Offices of Frederick K. Brewington *as a member of the legal staff* in an of counsel role . . . . His joining our office is and

15

will enhance the work of the firm in many ways." (Pl.'s Opp'n Ex. 2 (emphasis supplied).) Williams also submitted evidence showing that the Firm added a page to its website about Holt, noting his specialty in criminal defense and that "he is expanding his work to match the other aspects of what the firm does." (Pl.'s Opp'n Ex. 4.) Williams also provides a copy of the July 23, 2019 letter by which the Firm offered her employment, the top of which identifies that Holt serves as "Of Counsel" to the Firm. (Pl.'s Opp'n Ex. 5.) In his attorney profile on the New York State Unified Court System website, Holt identifies himself as a member of his own law firm, but nevertheless provides the Firm's physical address and phone number as his contact information. (Mot. Ex. R.)

Williams contends that Holt's work on cases handled by the Firm using the Firm's physical space and resources demonstrate that he was an employee in 2020 and 2021 for Title VII purposes. (Pl.'s Opp'n at 19–20.) Williams attests that the Firm "required employees to work Mondays through Fridays from around 10:00 a.m. to around 5:00 p.m. each day . . . [,]" that Holt regularly worked on this schedule, and that Holt attended the weekly Firm all staff meeting where Brewington assigned Holt cases and instructed Holt to attend hearings. (Williams Decl. ¶¶ 6–9.) Evidence in the record shows that Holt signed the Firm's sexual harassment policy (Pl.'s Opp'n Ex. 6), and Williams argues that Brewington required him to do so. (Pl.'s Opp'n at 5.) Williams also argues that Holt has played a significant role in the Firm's representation of criminal defendants. (Pl.'s Opp'n at 5; *see* Pl.'s Opp'n Exs. 1–2.) Brewington testified that Holt assisted with some of the Firm's cases. (Brewington Dep. 131:15–23, ECF No. 47-5.)  The Firm provided Holt with resources to perform his work on the Firm's cases, including an email address (oscar.holt@brewingtonlaw.com), administrative staff support, and an office. (*See, e.g.*, Mot. Ex. R; *see also* Pl.'s Opp'n Ex. 1 ("I ask you to join me in welcoming him and encourage

you to provide him with your full support and assistance as he learns more about what and how we do things in the office" and "Mr. Holt, [sic] will be occupying the office directly across from conference room 2.").) Holt filed a notice of appearance as counsel in a matter before this Court, which provides the Firm's address and phone number and his Firm email address as his contact information. (Pl.'s Opp'n Ex. 7.)

Based on this record, there are material questions of fact concerning whether Holt was a Title VII employee of the Firm in 2020 and 2021. *See Felder*, 27 F.4th at 843 (discussing the *Reid* factors). Several of the *Reid* factors weigh in favor of considering Holt an employee. The Firm was a "source of the instrumentalities and tools" of at least some of Holt's work as an attorney providing him with an email address, administrative support staff, and a physical office. *Id.*; *see* Pl.'s Opp'n Ex. 1. Holt performed legal work on the Firm's criminal cases and appears to have worked on other matters which may be "part of the regular business" of the Firm. *Felder*, 27 F.4th at 843; *see* Pl.'s Opp'n Exs. 1–2, 6–7. While it is undisputed that the Firm did not provide Holt monetary compensation or benefits, Defendants fail to provide legal authority establishing that these two *Reid* factors alone establish that Holt was not a Title VII employee in 2020 and 2021, particularly when the aforementioned *Reid* factors weigh in the other direction.

Notably, the record presents material questions of fact concerning how much control Defendants had over the cases Holt worked on, how long Holt listed the Firm's address as the address for his own firm on his New York State Unified Court System profile, and when the Firm added Holt to its website and letterhead. Answers to these questions may reveal that additional *Reid* factors weigh in favor of finding Holt an employee by clarifying "the hiring party's right to control the manner and means by which the product is accomplished . . . ; the location of the work; the duration of the relationship between the parties; whether the hiring

party has the right to assign additional projects to the hired party, [and] the extent of the hired party's discretion over when and how long to work." *Felder*, 27 F. 4th at 843.

The record also raises questions of fact as to whether Holt was an employee when viewed in light of the *Johnson & Higgins* factors. Relating to the first *Johnson & Higgins* factor, evidence in the record suggests that Holt may have taken on "traditional employee duties," *Frederick,* 558 F. App'x at 85, including the requirement to attend weekly Firm all staff meetings where Holt was assigned cases and instructed to attend hearings, signing the Firm's sexual harassment policy, and in providing legal services to criminal defendants represented by the Firm. (*See* Pl.'s Opp'n at 5; Williams Decl. ¶¶ 8–9, 14–17; Pl.'s Opp'n Ex. 6.) There are also questions of fact as to whether Holt "was regularly employed by a separate entity"—the second *Johnson & Higgins* factor, *Frederick*, 558 F. App'x at 85—during the second half of 2020 and in 2021. Holt attests that from 2019 until Spring 2020, he taught at St. John's University, spending time on teaching, "office hours, faculty meetings, and other related obligations" on Mondays, Wednesdays, and Thursdays of each week. (Holt Decl. ¶ 5.) That time period, however, does not cover the second half of 2020 or 2021, when the Firm is alleged to have been his Title VII employer. Holt also attests that, at some unspecified time, he was winding down his own legal practice, but the record does not establish that he maintained his own legal practice during 2020 or 2021. (*Id.* ¶ 9.)  Finally, and importantly, the record presents genuine questions of material fact concerning the third *Johnson & Higgins* factor, which considers whether Holt "reported to someone higher in the hierarchy." *Frederick,* 558 F. App'x at 85. Holt attests that he did not work for Brewington and that Brewington never assigned him to work on any cases, but Williams attests that Brewington assigned Holt work and instructed him to "attend upcoming court conferences and to address any imminent deadlines." (Holt Decl. ¶¶ 10, 15, 17; Williams

18

Decl. ¶¶ 12, 14–15.) Answers to these outstanding questions of fact could reveal that the *Johnson & Higgins* factors weigh in favor of finding that Holt was an employee of the Firm for Title VII purposes in 2020 and 2021.

Defendants' argument that Holt's designation as "Of Counsel" at the Firm definitively demonstrates that he was not an employee for Title VII purposes is unpersuasive. (*See* Reply at 3.) The critical question on Defendants' Motion for Summary Judgment is whether the undisputed facts establish that Holt was not an employee of the Firm in 2020 or 2021 under the common law of agency, which involves consideration of the *Reid* and *Johnson & Higgins* factors. *See City of New York*, 359 F.3d at 92; *Felder*, 27 F.4th at 843; *Frederick*, 558 F. App'x at 85. As addressed in detail above, Defendants fail to make this showing.

Finally, Defendants argue that the Williams's sworn declaration should be disregarded by this Court because it is "self serving." (Reply at 4–6.) This argument is unavailing. There are numerous material questions of fact as to whether Holt was a Firm employee for Title VII purposes based on evidence in the record other than Williams's sworn declaration, including Defendants' internal and external communications, the Firm's letterhead, Holt's notice of appearance in a case before this Court, and Holt's attorney profile on the New York State Unified Court system website, among other things, as addressed in detail above.

The record thus raises numerous questions of fact as to whether Holt was an employee of the Firm for purposes of Title VII in 2020 and 2021.

B.  Genuine Questions of Material Fact Exist as to Whether Attorney Steven Tannenbaum is an "Employee" under Title VII in 2020 and 2021.

The parties also dispute whether Attorney Steven Tannenbaum was an employee of the Firm for purposes of Title VII in 2020 and 2021. (Mot. at 21; Pl's Opp'n at 20–23.) Tannenbaum worked as co-counsel and "Of Counsel to the Law Firm" while maintaining "his own firm and

offices." (Mot. at 21.) According to Defendants, the Firm has never compensated Tannenbaum with a salary, wages, or benefits, and the Firm did not expect, require, or mandate that he participate in the Firm's work. (*Id.*)

Williams asserts that Brewington directed her to discuss all potential Firm medical malpractice cases with Tannenbaum, who would then determine whether the Firm should take on the potential cases. (Williams Decl. ¶¶ 27–31.) According to Williams, Brewington instructed her to relay information from medical malpractice intake calls to Tannenbaum, who then would "inform [her] of his decision about whether the Firm should take on" the potential matter. (*Id.* ¶¶ 28–29.) Williams attests that she worked with Tannenbaum on a number of medical malpractice cases, including matters related to Gail Robinson-Lee and Melvin Bloom, and that Tannenbaum assigned her case-related work. (*Id.* ¶¶ 32, 34.) Williams also attests that Tannenbaum worked at the Firm's office at least two days per week during 2020 and 2021, and that on those days, she would meet with him and "go over various assignments and discuss the status of our cases." (*Id.* ¶¶ 35–36.) Williams further attests that she spoke with Tannenbaum almost daily about the medical malpractice cases they worked on together. (*Id.* ¶ 33.) Williams states, "during a telephone call with Tannenbaum related to the cases we were working on together at that time, Tannenbaum complained to me that Brewington owed him $1,000 in connection with work that Tannenbaum completed related to the Melvin Bloom matter." (*Id.* ¶ 37.)

In a declaration submitted with Defendants' Reply brief, Tannenbaum makes sworn statements that directly contradict the statements in Williams's sworn declaration. (*See* Reply Ex. C.) Tannenbaum attests that he was not an employee of the Firm, never received a paycheck or W-2 from the Firm, and that "all of the compensation" that he earns is through the salary paid by

his own firm, Tannenbaum, Bellantone & Silver PC. (*Id.* ¶ 7.) Tannenbaum states that

Brewington asked him to assist him "purely on an of counsel basis" in handling four medical

malpractice cases, and that his role on those matters was limited to reviewing medical records,

discussing those records with Brewington, working with medical experts and appearing on

behalf of Brewington's firm at one or two depositions. (*Id.* ¶ 9; Brewington Decl. ¶ 5 (identifying

the four cases that Tannenbaum worked on for the Firm).) According to Tannenbaum, he never

worked with Williams on those four cases or spoke to her about them, and "only received

compensation on one of these cases to date, which was in 2023," based on hourly billing that he

submitted and which was paid to his firm. (Tannenbaum Decl. ¶ 9.) Tannenbaum also attests:

> Additionally, from time to time, I was asked by Mr. Brewington to review
> medical malpractice cases which his office had been handling prior to the time
> that we had become acquainted. This only happened on a few occasions, and on
> some of these occasions, Mr. Brewington's office directed Ms. Williams to
> physically bring the files into a conference room. Mostly, these were cases which
> I was not prepared to accept on an of counsel basis, and on those cases, I would
> provide Ms. Williams as the representative from Mr. Brewington's office my
> suggested list of what needed to be done.

(*Id.* ¶ 10.) Tannenbaum also attests that he never had a regular schedule of working in the Firm's

office and did not speak to Williams almost every day about the Firm's medical malpractice

cases on which they worked together. (*Id.* ¶ 11.) He further attests that he did not accept the

Robinson-Lee and Bloom cases into his firm, and any work he did as "Of Counsel" to the Firm

to review those cases was to determine if his own firm would accept them. (*Id.* ¶ 12.)

Tannenbaum further attests he "never had any relationship with Mr. Brewington to be

paid for" work on the Bloom case, and that he did not complain to Williams about being owed

$1,000 for such work. (*Id.* ¶ 13.) According to Tannenbaum, "[o]n cases such as these which I

did not accept into my office, I would extend a courtesy to Mr. Brewington's office, whether it

be to Ms. Williams or other attorneys or paralegals in Mr. Brewington's office, of instructing

21

them as to a number of things that their office needed to complete in order for Mr. Brewington's firm to continue as attorney of record." (*Id*. ¶ 14.) Tannenbaum attests that he did not work at the Firm's office at least two days per week, only occasionally showed up at the Firm to review files for Brewington on his way home, never informed Defendants whether they should accept a case, and did not supervise Williams. (*Id*. ¶¶ 15–16.) According to Tannenbaum, however, employees of the Firm would call him "from time to time if a new client contacted their firm on a medical malpractice issue" and he would speak to them from his own office or from the Firm's office to "discuss[] their possible case with them." (*Id*. ¶ 18.) Tannenbaum attests: "If I decided that a new inquiry possibly had merit, I would assume handling the case in my firm's name and I would handle all of the paperwork from my office with my staff." (*Id*. ¶ 20.) Tannenbaum states, however, that he would sometimes meet with those clients in the Firm's office when it was convenient for them and, in those circumstances, "would regularly discuss the prosecution of the case" with Brewington "to obtain his input and inform him of the progress of the case." (*Id*.) The record generally contains less evidence as to the terms and conditions of Tannenbaum's work with the Firm compared to the terms and conditions of Holt's work with the Firm.

There are questions of fact as to whether Tannenbaum was a Firm employee in either 2020 or 2021 under the *Reid* and *Johnson & Higgins* factors. While the record shows that Tannenbaum also had his own firm, it is disputed whether the Firm provided Tannenbaum compensation for his work on medical malpractice cases. (Mot. at 21; Williams Decl. ¶ 37.)[6] The record also gives rise to questions of fact concerning the following *Reid* factors: whether

---

[6] Tannenbaum attests that he did receive some compensation from the Firm to his own law firm for his work on one of the Firm's cases. (*See* Tannenbaum Decl. ¶ 9.) Williams's assertion that "Tannenbaum complained to [her] that Brewington owed him $1,000 in connection with work that Tannenbaum completed . . ." for the Firm (Williams Decl. ¶ 37) is hearsay. The Court's finding that the record presents questions of fact as to whether Tannenbaum was a Firm employee for Title VII purposes in 2020 and 2021 does not hinge on this statement and the Court makes no finding at this time as to whether the statement does or does not fall within an exception to the hearsay rule. *See Ridinger*, 651 F.3d at 317 ("[I]nadmissible evidence [is] insufficient to defeat summary judgment.").

Tannenbaum worked with the firm on medical malpractice cases that were "part of the regular business" of the Firm in 2020 or 2021; whether the Firm exercised control over the "the manner and means" by which Tannenbaum worked on those cases with the Firm; "the location of the work"; whether the Firm provided Tannenbaum with the "source of the instrumentalities and tools" in the form of office space, files, and administrative support; Tannenbaum's discretion over when and how long to work; "whether the hiring party has the right to assign additional projects to the hired party"; and the "duration of the relationship between the parties." *Felder*, 27 F.4th at 843.

The record also gives rise to questions of fact concerning how the first and third *Johnson & Higgins* factors apply to Tannenbaum: whether Tannenbaum "has undertaken traditional employee duties" and "reported to someone higher in the [Firm] hierarchy" with respect to his work on the Firm's medical malpractice cases. *Frederick*, 558 F. App'x at 85. As to the first *Johnson & Higgins* factor, there are questions of fact concerning whether Tannenbaum undertook traditional employee duties through his role in assessing medical malpractice intakes received by the Firm, meeting with Firm employees to discuss those intakes and the Firm's existing medical malpractice cases, and providing the Firm's employees with suggested lists of things to do for the Firm to litigate its medical malpractice cases. (*See* Tannenbaum Decl. ¶¶ 9– 11, 14.) Tannenbaum himself attests that, after being asked by Brewington, he "review[ed] medical malpractice cases which [the Firm] had been handling" and then provided Williams with his recommendations on next steps. (*Id.* ¶ 10.) He describes physically reviewing the files in those cases and providing the Firm with his "suggested list of what needed to be done." (*Id.*) Even with respect to medical malpractice cases that Tannenbaum had assessed but declined to take on through his own firm, Tannenbaum "instruct[ed]" the Firm's staff "as to the number of

things their office needed to complete in order for Mr. Brewington's firm to continue as attorney of record" on those matters. (*Id.* ¶ 14.) Based on Tannenbaum's own description of his work, there are also questions of fact as to whether he reported to Brewington on the medical malpractice cases that he worked on with the Firm—the third *Johnson & Higgins* factor. (*See id.* ¶ 10 (Tannenbaum describes being "asked by Mr. Brewington to review medical malpractice cases" and provide a recommendation); *Id.* ¶ 11 (attesting that Brewington would direct someone in the Firm to ask Tannenbaum to come to the Firm's office to review files); Williams Decl. ¶ 31).) Although the second *Johnson & Higgins* factor weighs against finding that Tannenbaum was a Firm employee in 2020 and 2021 based on his "regularly employ[ment]" by his own firm, *Frederick*, 558 F. App'x at 85, the record as a whole raises genuine questions of fact as to whether Tannenbaum was a Title VII employee in 2020 and 2021 under the *Reid* and *Johnson & Higgins* factors.

While Defendants argue that Tannenbaum only worked part-time on the Firm's cases, part-time workers can still meet the definition of a "employee" and be counted for purposes of determining whether an employer meets Title VII's numerical threshold. *See Jones*, 1996 WL 267941, at *2 ("Regular part-time workers meet the definition of 'employee' and can be counted toward meeting the jurisdictional minimum number of employees under Title VII."). It remains disputed whether the Firm was a "source of the instrumentalities and tools" of Tannenbaum's work as an attorney, *Felder*, 27 F.4th at 843, by providing him with administrative support staff and a space in the office to work twice a week. (*See* Tannenbaum Decl. ¶¶ 7, 11; Williams Decl. ¶¶ 35–36.)

Defendants argue that the sworn statements about Tannenbaum's relationship to and work with the Firm in the Williams declaration should be rejected because they are "self-

serving." (Reply at 4–6.) Defendants rely on *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995), and *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir. 1991), for the proposition that "[s]elf-serving affidavits are accorded little weight on summary judgment." (Reply at 4.) The statement that Defendants attribute to *Geonaga* and *Bryant* does not appear anywhere in the text of either decision. *See Goenaga*, 51 F.3d 14; *Bryant,* 923 F.2d 979.

Contrary to Defendants' assertion, the Second Circuit has found that there is nothing in Federal Rule of Civil Procedure 56(c) "to suggest that nonmovants' affidavits alone cannot—as a matter of law—suffice to defend against a motion for summary judgment." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998); *see also Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) ("Contrary to the district court's analysis, a . . . plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact."); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("The summary judgment standard requires a court to consider all relevant, admissible evidence submitted by the parties . . .  together with . . . affidavits.") (quotation marks omitted).

Defendants rely on *Hayes v. N.Y.C. Department of Corrections*, 84 F.3d 614 (2d Cir. 1996), for the proposition that "factual issues created solely by an affidavit to oppose a summary judgment motion are not genuine issues for trial." (Reply at 5 (citing *Hayes*, 84 F.3d at 619).) *Hayes* is inapposite, however, because it concerned allegedly conflicting deposition testimony submitted in support of defendants' motion for summary judgment, not the submission of a sworn affidavit or declaration submitted by a nonmoving party to *defend* against summary judgment. *See* 84 F.3d at 619–20. The Second Circuit has made clear, that "[a]t summary judgment, [a plaintiff is] entitled to rely on his own testimony" to defeat a defendant's motion. *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016). There is no basis for rejecting the Williams

declaration here where Defendants submitted sworn declarations from Holt and Tannenbaum to oppose the Williams declaration, but Williams has had no opportunity to respond to Defendants' declarations, which were submitted for the first time on reply. (*See* Holt Decl.; Tannenbaum Decl.) "[W]here new evidence is presented in a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion." *Kelly v. Times/Rev. Newspapers Corp.*, No. 14-CV-2995, 2018 WL 1701999, at *7 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, No. 14-CV-2995, 2018 WL 1701945 (E.D.N.Y. Mar. 31, 2018).

The record thus raises numerous questions of fact as to whether Tannenbaum was an employee of the Firm for purposes of Title VII in 2020 and 2021. These questions of fact, along with the undisputed facts that there are thirty-three weeks in 2020 and thirty-eight weeks in 2021 when the Firm had thirteen employees (*see* Appendix A & B), Defendants fail to show that the Firm does not meet Title VII's numerical threshold, and summary judgment is unwarranted at this time.

## IV.   Additional Discovery on the Employment Status of Holt and Tannenbaum is Warranted.

"[S]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); *see also Foresta v. Centerlight Cap. Mgmt.*, LLC, 379 F. App'x 44, 46 (2d Cir. 2010) (denying summary judgment and permitting additional discovery concerning whether certain individuals were independent contractors or employees under Title VII. "[W]hen a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and

26

rebut the motion." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001). Under Rule 56(d), Fed. R. Civ. P., "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." The Second Circuit has made clear that the affidavit must show "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13 (2d Cir. 2013) (quoting *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)).

In opposing Defendants' Motion for Summary Judgment, Williams submits a sworn declaration from counsel, Attorney Taylor J. Crabill, which describes the discovery conducted to date on Title VII's applicability to the Firm and addressing the Rule 56(d) factors that support Williams's request for additional discovery to defeat Defendants' Motion for Summary Judgment. (Pl.'s Opp'n at 25–26; Crabill Decl. ¶¶ 21–45, ECF No. 47-2.) Williams claims that Defendants have "frustrated discovery related to the *Reid* factors, particularly in connection with the Firm's claim that Holt and Tannenbaum are volunteers or independent contractors" which is critical to determining whether the Firm meets Title VII's numerical threshold. (Pl.'s Opp'n at 25.) Crabill explains that "Plaintiff was limited to one three-hour FRCP 30(b)(6) deposition of [Brewington] prior to engaging in document discovery" and "did not have an opportunity to depose Holt or Tannenbaum . . . ." (*Id.*)

The Crabill declaration describes the parties' disputes concerning discovery on whether Holt and Tannenbaum were Firm employees for purposes of Title VII in 2020 and 2021. (Crabill Decl. ¶¶ 21–42.) The Crabill declaration describes Defendants' failure to produce requested

discovery on this issue—including "documents concerning the Firm's relationship with supposed

independent contractors [where Defendants'] only supplemented their production with additional

payroll documents summarizing wages paid to employees . . .", as well as "documents,

communications, and electronically stored information concerning the Firm's retaining, hiring,

or otherwise engaging any third party to perform any work (paid or unpaid) on the Firm's

behalf." (*Id.* ¶¶ 27–29, 34–42.) Crabill attests that Defendants refused to provide this

information, asserting that the request was "beyond the scope of discovery . . . ." (*Id.* ¶ 35.)

Specifically, Crabill attests that Defendants failed to produce any discovery related to the

following document requests:

> (i) any documents or communications related to the terms and conditions of
> Holt's relationship with the Firm; (ii) any documents or communications related
> to negotiations and/or discussions about the terms and conditions of Holt's
> relationship with the Firm; (iii) documents and communications related to
> Defendant's control over Holt; (vi) any documents or communications related to
> the terms and conditions of Tannenbaum's relationship with the Firm; (v) any
> documents or communications related to negotiations and/or discussions about the
> terms and conditions of Tannenbaum's relationship with the Firm; (vi) documents
> and communications related to Defendant's control over Tannenbaum; (vii) any
> documents or communications related to the terms and conditions of Morris's
> relationship with the Firm; (viii) any documents or communications related to
> negotiations and/or discussions about the terms and conditions of Morris's
> relationship with the Firm; or (ix) documents and communications related to
> Defendant's control over Morris.

(*Id.* ¶ 42.) Due to Defendants' inadequate discovery responses, Williams requests the following

targeted discovery: (1) "hard copy discovery and electronic discovery via ESI protocol limited to

Holt and Tannenbaum and the factors outlined in" *Reid* "related to the determination of whether

an individual is an employee under Title VII"; and (2) "depositions of Holt, Tannenbaum, and

Brewington." (Crabill Decl. ¶ 45.) Crabill attests that the evidence obtained through the

document discovery and depositions could give rise to a genuine dispute of material fact. *See*

Crabill Decl. ¶ 44; *see also Ass'n of Car Wash Owners, Inc. v. City of New York*, 911 F.3d 74,

83–84 (2d Cir. 2018) ("Rule 56(d) of the Federal Rules of Civil Procedure authorizes district

courts to defer ruling on a motion for summary judgment—or to deny the motion altogether—[i]f

a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition." (quotation marks omitted)).

Defendants counter that discovery on Title VII's applicability to the Firm and on Holt

and Tannenbaum's employment status was adequate because "allowance was made for

[Williams] to take a deposition, have interrogatories propounded, issue document demands,

review documents and having conferences with the Court on Discovery . . . ." (Reply at 2.)

Defendants assert that Williams's request for additional discovery under Rule 56(d) is a

reassertion of the parties' discovery disputes. (*Id*.)

As noted above, the current record gives rise to genuine questions of fact concerning

whether Tannenbaum or Holt were employees in 2020 and 2021. But even if such questions did

not exist, the Crabill declaration satisfies the four requirements of Rule 56(d) as articulated by

the Second Circuit to support a grant of Williams's request for additional, limited discovery on

Title VII's applicability to the Firm. *See Lunts*, 515 F. App'x at 13.

First, the Crabill declaration addresses "(1) what facts are sought and how they are to be

obtained" by requesting limited document discovery and depositions of Holt, Tannenbaum, and

Brewington concerning Holt and Tannenbaum's relationship to, and work with, the Firm. (*See*

Crabill Decl. ¶¶ 44–45.) The requested discovery would supply facts necessary for the Courts

assessment under the *Reid* factors, which govern whether an individual was a Firm employee for

purposes of Title VII in either 2020 or 2021. (*See id*.)

Second, the requested discovery "is reasonably expected to create a genuine issue of material fact" because it could uncover facts showing that Holt and/or Tannenbaum were employees for purposes of Title VII in 2020 or in 2021 through application of the *Reid* and *Johnson & Higgins* factors. (*See* Crabill Decl. ¶ 44.)

As to the third and fourth factors—the efforts made by Crabill to obtain needed facts and why those efforts have been unsuccessful—the Crabill declaration details Defendants failure to produce relevant information on whether the Firm meets Title VII's numerical threshold, including information to resolve whether Holt and Tannenbaum were Firm employees under the *Reid* and *Johnson & Higgins* factors, despite Williams's best efforts at pursuing this discovery. (*See* Crabill Decl. ¶ 36 (attesting that Defendants refused to "produce discovery related to Holt and other supposed independent contractors."); *see also* ECF No. 27 (Nov. 2, 2022 letter to from Plaintiff appraising the Court of its discovery requests related the Firm's various employment relationships and Defendants' agreement to produce the discovery within two weeks); ECF No. 28 (Nov. 21, 2022 letter from Plaintiff appraising the Court of Defendants' refusal to produce any of the agreed upon ESI discovery related to the Firm's employment relationships); ECF No. 30 (Feb. 15, 2023 letter from Plaintiff appraising the Court of Defendants' failure to produce "the personnel files on which Brewington relied to prepare for [his 30(b)(6)] deposition . . .[,]" and Defendants failure to "produce any documents [related to the requested employment relationship discovery] and provided only limited and incomplete interrogatory responses.").)

The record demonstrates that Defendants frustrated Williams's attempts to obtain relevant information concerning the Firm's employment relationships with various people, including with paid and unpaid independent contractors, which may include evidence of Holt and Tannenbaum's relationship with the Firm. (Crabill Decl. ¶¶ 21–42.) In a conference on April 12,

2023, Magistrate Judge Shields warned the Defendants "that if the Firm failed or refused to produce relevant discovery, then the Firm might face an application under Fed. R. Civ. P. 56(d) warranting the denial of a motion for summary judgment on Title VII applicability." (*Id.* ¶¶ 37–40). Based on this record, Rule 56(d) discovery on the question of whether Holt and Tannenbaum were Firm employees in 2020 and 2021 is warranted. That discovery shall ensure that the record addresses Holt and Tannenbaum's status with the Firm for each week of 2020 and 2021 because the question of whether the Firm was a Title VII employer in either 2020 or 2021 is determined by considering the number of employees at the Firm for each week of the year— not each month of the year or some other unit of time.

The parties are permitted to engage in document discovery and depositions of Holt, Tannenbaum, and Brewington using the *Reid* and *Johnson & Higgins* factors as guidance. The limited, expedited discovery is referred to Magistrate Judge Anne Shields and shall be completed within sixty days of this Order.

## CONCLUSION

For the reasons set forth above, the Court dismisses Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss as moot, or in the alternative denies it on the merits, denies Defendants' Motion for Summary Judgment, and grants Plaintiff's Rule 56(d) request for additional discovery on the question of whether Oscar Holt III and Steven Tannenbaum were employees of the Firm in 2020 and 2021. The Court orders the parties to conduct limited,

expedited discovery resolving the question of Title VII's applicability to the Firm before

Magistrate Judge Anne Shields.


Dated: Central Islip, New York

March 1, 2024


        _____/s Nusrat J. Choudhury_____
            NUSRAT J. CHOUDHURY
            United States District Judge

APPENDIX A[7]

**2020 Employees of the Law Offices of Frederick K. Brewington and Precilla Locket Based on Defendants' Response to Williams'ss Interrogatory No. 11**

| Week Start Date | Week End Date | Number of Employees Identified by Defendants in Response to Interrogatory No. 11 as Working for Part of the Year | Number of Employees Identified by Defendants in Response to Interrogatory No. 11 as Working for the Entire Year | Total Number of Employees for the Week |
|---|---|---|---|---|
| 1/1/2020 | 1/7/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 1/8/2020 | 1/14/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 1/15/2020 | 1/21/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 1/22/2020 | 1/28/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 1/29/2020 | 2/4/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne | 15 |

---

[7] The Court created this chart based on Defendants' Supplemental Response to Plaintiff's First Set of Interrogatories Related to Title VII Applicability, dated February 15, 2023, Interrogatory No. 11 which asked Defendants to "[i]dentify each and every person or employee who worked at the Firm in 2020 and his or her dates of employment." (ECF No. 47-13 at 7–9.)

| | | | | |
|---|---|---|---|---|
| | | Cathryn Harris, Tricia Lindsay) | Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | |
| 2/5/2020 | 2/11/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 2/12/2020 | 2/18/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 2/19/2020 | 2/25/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 2/26/2020 | 3/3/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 3/4/2020 | 3/10/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 3/11/2020 | 3/17/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie | 14 |

| | | | Walker, Dana-Simone Williams, Casey Wilson) | |
|---|---|---|---|---|
| 3/18/2020 | 3/24/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 3/25/2020 | 3/31/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 4/1/2020 | 4/7/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 4/8/2020 | 4/14/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 4/15/2020 | 4/21/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 4/22/2020 | 4/28/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |

| 4/29/2020 | 5/5/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 5/6/2020 | 5/12/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 5/13/2020 | 5/19/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 5/20/2020 | 5/26/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 5/27/2020 | 6/2/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 6/3/2020 | 6/9/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 6/10/2020 | 6/16/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern | 13 |

| | | | Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | |
|---|---|---|---|---|
| 6/17/2020 | 6/23/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 6/24/2020 | 6/30/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 7/1/2020 | 7/7/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 7/8/2020 | 7/14/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 7/15/2020 | 7/21/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 7/22/2020 | 7/28/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |

| 7/29/2020 | 8/4/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
|---|---|---|---|---|
| 8/5/2020 | 8/11/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 8/12/2020 | 8/18/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 8/19/2020 | 8/25/2020 | 1 (Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 8/26/2020 | 9/1/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 9/2/2020 | 9/8/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 9/9/2020 | 9/15/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern | 11 |

| | | | | |
|---|---|---|---|---|
| | | | Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | |
| 9/16/2020 | 9/22/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 9/23/2020 | 9/29/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 9/30/2020 | 10/6/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 10/7/2020 | 10/13/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 10/14/2020 | 10/20/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 10/21/2020 | 10/27/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |

| 10/28/2020 | 11/3/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 11/4/2020 | 11/10/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 11/11/2020 | 11/17/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 11/18/2020 | 11/24/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 11/25/2020 | 12/1/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 12/2/2020 | 12/8/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 12/9/2020 | 12/15/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern | 11 |

40

| | | | | |
|---|---|---|---|---|
| | | | Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | |
| 12/16/2020 | 12/22/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 12/23/2020 | 12/29/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 12/30/2020 | 1/5/2021 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |

APPENDIX B[8]

**2021 Employees of the Law Offices of Frederick K. Brewington and Precilla Locket Based on Defendants' Response to Williams's Interrogatory No. 12**

| Week Start Date | Week End Date | Number of Employees Identified by Defendants in Response to Interrogatory No. 11 as Working for Part of the Year | Number of Employees Identified by Defendants in Response to Interrogatory No. 11 as Working for the Entire Year | Total Number of Employees for the Week |
|---|---|---|---|---|
| 1/1/21 | 1/7/21 | 9 (Jeanette Berry, Alexis Epstein, Itohen Ihaza, Dwayne Lindsey, Kristina Negri, Cobia Powell, Dennis Swanson, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 18 |
| 1/8/21 | 1/14/21 | 9 (Jeanette Berry, Alexis Epstein, Itohen Ihaza, Dwayne Lindsey, Kristina Negri, Cobia Powell, Dennis Swanson, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 18 |
| 1/15/21 | 1/21/21 | 9 (Jeanette Berry, Alexis Epstein, Itohen Ihaza, Dwayne Lindsey, Kristina Negri, Cobia Powell, Dennis Swanson, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 18 |
| 1/22/21 | 1/28/21 | 5 (Jeanette Berry, Dwayne Lindsey, Kristina Negri, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 1/29/21 | 2/4/21 | 5 (Jeanette Berry, Dwayne Lindsey, Kristina Negri, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |

---

[8] The Court created this chart based on Defendants' Supplemental Response to Plaintiff's First Set of Interrogatories Related to Title VII Applicability, dated February 15, 2023, Interrogatory No. 12 which asked Defendants to "[i]dentify each and every person or employee who worked at the Firm in 2021 and his or her dates of employment." (ECF No. 47-13 at 9–10.)

| 2/5/21 | 2/11/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 2/12/21 | 2/18/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 2/19/21 | 2/25/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 2/26/21 | 3/4/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 3/5/21 | 3/11/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 3/12/21 | 3/18/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 3/19/21 | 3/25/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 3/26/21 | 4/1/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard | 14 |

| | | Matilda Warren, Dana-Simone Williams) | Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | |
|---|---|---|---|---|
| 4/2/21 | 4/8/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 4/9/21 | 4/15/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 4/16/21 | 4/22/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 4/23/21 | 4/29/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 4/30/21 | 5/6/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 5/7/21 | 5/13/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 5/14/21 | 5/20/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |

| | | | | |
|---|---|---|---|---|
| 5/21/21 | 5/27/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 5/28/21 | 6/3/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 6/4/21 | 6/10/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 6/11/21 | 6/17/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 6/18/21 | 6/24/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 6/25/21 | 7/1/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 7/2/21 | 7/8/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 7/9/21 | 7/15/21 | 3 (Jeanette Berry, Maria Dyson, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard | 12 |

| | | | Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | |
|---|---|---|---|---|
| 7/16/21 | 7/22/21 | 3 (Jeanette Berry, Maria Dyson, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 7/23/21 | 7/29/21 | 3 (Jeanette Berry, Maria Dyson, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 7/30/21 | 8/5/21 | 3 (Jeanette Berry, Maria Dyson, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 8/6/21 | 8/12/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 8/13/21 | 8/19/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 8/20/21 | 8/26/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 8/27/21 | 9/2/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |

| | | | | |
|---|---|---|---|---|
| 9/3/21 | 9/9/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 9/10/21 | 9/16/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 9/17/21 | 9/23/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 9/24/21 | 9/30/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 10/1/21 | 10/7/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 10/8/21 | 10/14/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 10/15/21 | 10/21/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 10/22/21 | 10/28/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard | 13 |

| | | | Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | |
|---|---|---|---|---|
| 10/29/21 | 11/4/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 11/5/21 | 11/11/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 11/12/21 | 11/18/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 11/19/21 | 11/25/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 11/26/21 | 12/2/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 12/3/21 | 12/9/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 12/10/21 | 12/16/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |

| 12/17/21 | 12/23/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 12/24/21 | 12/30/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 12/31/21 | | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |