**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Dana-Simone Williams,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　-v-<br><br>The Law Offices of Frederick K. Brewington, Frederick K. Brewington, *in his individual and professional capacities*, and Precilla Lockett, *in her individual and professional capacities*,<br><br>　　　　　　　　　　　Defendants. | 2:22-cv-983<br>(NJC) (AYS) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Dana-Simone Williams brings this action against the Law Offices of Frederick K. Brewington (the "Brewington Firm"), Frederick K. Brewington, and Precilla Lockett (collectively, "Defendants") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"). Williams claims that she was subjected to sexual harassment, retaliation, and discriminatory termination during the course of her employment at the Brewington Firm as a legal assistant. (*See generally* Am. Compl., ECF No. 17.)

Currently before the Court is Defendants' Renewed Motion for Summary Judgment under Rule 56, Fed. R. Civ. P., in which they seek summary judgment on Williams' Title VII claims on the basis that the Brewington Firm, the sole defendant on these claims, does not

qualify as an "employer" subject to the statute. (*See* Mot., ECF No. 103-1.)[1]

I denied Defendants' previous motion for summary judgment on the Title VII claims, which made the same legal argument, in a March 1, 2024 Memorandum and Order (the "Memorandum and Order"). *See Williams v. Law Offices of Frederick K. Brewington*, No. 2:22-cv-983, 2024 WL 896883 (E.D.N.Y. 2024). The Memorandum and Order is incorporated by reference and familiarity with it is presumed.

In the Memorandum and Order, I concluded that in order to defeat summary judgment on her Title VII claims, Williams must show a genuine dispute of material fact as to whether the Brewington Firm employed fifteen employees for twenty weeks in either 2020 or 2021 as required for Title VII to apply to it during the timeframe of Williams' claims. *Id*. at *7. I found that the record showed that "there are seven weeks in 2020 when the [Brewington] Firm had fifteen employees, eight weeks when the [Brewington] Firm had at least fourteen employees, and eighteen weeks when the [Brewington] Firm had at least thirteen employees." *Id*.; *see also* Appendix A *infra*. I also concluded that "there were three weeks in 2021 when the [Brewington] Firm had eighteen employees, twelve weeks when the [Brewington] Firm had fourteen employees, and twenty-three weeks when the [Brewington] Firm had thirteen employees." *Williams*, 2024 WL 896883 at *7; *see also* Appendix B *infra*. Based on these factual findings, Williams may survive summary judgment on her Title VII claims if she shows that there is a genuine dispute of material fact as to whether *both* Steven Tannenbaum and Oscar Holt were employees of the Brewington Firm either (1) during five of the eighteen weeks in 2020 when the Brewington Firm otherwise had thirteen employees, or (2) during five of the twenty-three weeks

---

[1] Williams asserts Title VII claims only against the Brewington Firm and not against Brewington or Lockett. (*See* Am. Compl. ¶¶ 202–17.)

in 2021 when the Brewington Firm otherwise had thirteen employees. *Id*. Finally, I also ordered the parties to conduct jurisdictional discovery on the employment status of Tannenbaum and Holt in 2020 and 2021. *Id*. at \*13–15.

On Defendants' Renewed Motion for Summary Judgment, I consider a factual record expanded by the parties' conduct of jurisdictional discovery. For the reasons explained below, the undisputed facts establish that Tannenbaum was not a Title VII employee of the Brewington Firm in either 2020 or 2021. During both years, Tannenbaum was highly skilled in medical malpractice litigation and maintained an active law practice through his own law firm, Tannenbaum, Bellantone & Silver, P.C. (the "TBS Firm"), while receiving referrals of potential medical malpractice cases from the Brewington Firm. Although Tannenbaum also handled litigation tasks as a consultant to the Brewington Firm on four of its medical malpractice matters, Tannenbaum handled discrete and limited tasks, worked out of his own office at the TBS Firm, and billed the Brewington Firm through invoices for payments to the TBS Firm. Moreover, the Brewington Firm never paid Tannenbaum a salary or provided him office space at the Brewington Firm's office suite. The undisputed facts overwhelmingly demonstrate Tannenbaum's independence from the Brewington Firm under the tests set forth in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), and *E.E.O.C. v. Johnson & Higgins, Inc.*, 91 F.3d 1529 (2d Cir. 1996).

The record presents a closer question as to whether Oscar Holt was an employee of the Brewington Firm in either 2020 or 2021. Application of the *Reid* factors to the undisputed facts shows that there is a genuine dispute of material fact as to Holt's employment status from June through December 2020 and in 2021, while the *Johnson & Higgins* factors weigh in favor of finding that Holt was a Brewington Firm employee during those time periods. Nevertheless,

3

because Tannenbaum was not an employee of the Brewington Firm in either 2020 or 2021, the undisputed facts establish that the Brewington Firm did not have at least fifteen employees for twenty weeks in either year as required for it to be an "employer" for purposes of Title VII during the timeframe of Williams' claims.

Accordingly, Defendants' Renewed Motion for Summary Judgment is granted in full. In the absence of any federal claims, I decline to exercise supplemental jurisdiction over Williams' remaining state law claims.

## BACKGROUND

The facts and procedural history are set forth in the Memorandum and Order and familiarity with them is presumed. The following are additional facts established by the record on Defendants' Renewed Motion for Summary Judgment.

The Brewington Firm is a law firm that practices civil rights litigation and has an office in Hempstead, New York. (April 2, 2025 Declaration of Frederick K. Brewington ("2025 Brewington Decl.") ¶ 1, ECF No. 96.) Brewington is an attorney and principal of the Brewington Firm. (*Id*.) Steven Tannenbaum and Oscar Holt are attorneys who worked with, and on behalf of, the Brewington Firm on certain matters in 2020 and 2021. Williams was employed as a legal assistant by the Brewington Firm from July 23, 2019 to June 14, 2021, the date on which her employment was terminated. (Am. Compl. ¶ 20; ECF No. 96-1.)

### I.    Steven Tannenbaum

Steven Tannenbaum is a partner of the firm Tannenbaum, Bellantone & Silver, P.C. (Nov. 3, 2023 Declaration of Steven Tannenbaum ("2023 Tannenbaum Decl.") ¶ 6, ECF No. 96-13.) He has been a salaried partner at prior versions of the TBS Firm since 1990. (*Id*.) Tannenbaum specializes in medical malpractice and personal injury litigation. (*Id*. ¶ 5.) In light

4

of his subject matter expertise, Tannenbaum has relationships with more than 25 law firms in the New York metropolitan area that refer medical malpractice cases to him. (*Id*.) Tannenbaum and Brewington became acquainted with one another through their shared professional circles. (*Id.* ¶ 9.)

Tannenbaum began working with the Brewington Firm in an "of counsel" role in around 2019 or 2020, after Brewington requested Tannenbaum's assistance with preparing an opposition to a summary judgment motion in a medical malpractice case. (Defs.' Excerpts from Deposition Transcript of Steven Tannenbaum ("Defs.' Tannenbaum Tr.") 14:17–15:7, ECF No. 96-9.) In connection with that case, Tannenbaum met with an expert witness on two occasions to help prepare the expert's affidavit and drafted the affidavit for Brewington's review. (*Id*. 15:3–7.) Tannenbaum did not enter an appearance or enter into any co-counsel agreement with the Brewington Firm regarding his work on the case and was not compensated for his work. (*Id*. 15:20–16:1; 17:17–18.)

Tannenbaum's involvement with the Brewington Firm became more regular in 2020, after a medical malpractice attorney who worked at the Brewington Firm passed away. (*Id*. 13:10–20.) Brewington asked Tannenbaum if he and the TBS Firm could take on some of the Brewington Firm's medical malpractice cases or accept referrals for new medical malpractice cases. (*Id*. 13:10–14:24; 19:18–25; 20:11–14.) Tannenbaum agreed to consider evaluating and accepting cases from the Brewington Firm on a case-by-case basis. (*Id*. 19:18–25.) To that end, Tannenbaum and Brewington entered into a referral agreement by which the Brewington Firm would refer prospective clients to Tannenbaum and the TBS Firm. (Pl.'s Excerpts from Deposition Transcript of Steven Tannenbaum ("Pl.'s Tannenbaum Tr.") 20:11–14, ECF No. 100-11.) Tannenbaum does not recall whether this agreement was ever memorialized in writing. (*Id*.

20:15–18.) The agreement was subject to a fee structure determined by a variety of factors, including whether another law firm had originally referred the potential matter to the Brewington Firm before the Brewington Firm referred it to the TBS Firm. (*Id*. 20:17–24.)

In connection with this referral arrangement, Tannenbaum came to the Brewington Firm's office suite to review the files of prospective medical malpractice cases. (Defs.' Tannenbaum Tr. 39:7–40:4; 62:25–63:5.) Tannenbaum did not have his own office space at the Brewington Firm and worked out of a conference room to review case files for potential new medical malpractice matters. (*Id*. 42:6–12.) Tannenbaum occasionally had a member of the Brewington Firm drop off case files to his own office at the TBS Firm. (2023 Tannenbaum Decl. ¶ 15.) Tannenbaum met with prospective clients referred to him by Brewington at the Brewington Firm's office suite or spoke to them on the phone from his office at the TBS Firm. (*Id*. ¶ 18; Defs.' Tannenbaum Tr. 43:24–44:5.)

Tannenbaum testified in deposition that, as of the date of his deposition in December 2024, he had been to the Brewington Firm's office suite around 20 to 25 times. (Defs.' Tannenbaum Tr. 39:17–40:4.) By contrast, Williams attests that Tannenbaum worked at the Brewington Firm's office suite at least two days each week during her employment from July 2019 until June 2021, which translates to more than 200 times. (Declaration of Dana-Simone Williams ("Williams Decl.") ¶¶ 1, 35, 40, ECF No. 100-1.) According to Williams, she would meet with Tannenbaum "in a conference room to go over various assignments and discuss the status of [their] cases." (*Id*. ¶ 36.)

With respect to the cases Tannenbaum declined to accept on behalf of the TBS Firm, Tannenbaum provided attorneys and staff at the Brewington Firm with a "suggested list of what needed to be done," including recommended filings, experts, records to secure, and other

guidance about the "proper procedures to be followed in [] litigating a medical malpractice case . . . ." (Pl.'s Tannenbaum Tr. 54:12–55:14; *see also* 2023 Tannenbaum Decl. ¶ 14.) Tannenbaum would also recommend to the Brewington Firm whether it should take on the potential matter. (*See* Williams Decl. ¶ 29.)

It is undisputed that, in 2020 and 2021, Tannenbaum also assisted the Brewington Firm with four of its ongoing cases involving civil rights and medical malpractice claims brought on behalf of people incarcerated in the Nassau County Correctional Center. (Defs.' Tannenbaum Tr. 26:14–29:10; March 30, 2025 Declaration of Steven Tannenbaum ("2025 Tannenbaum Decl.") ¶ 13, ECF No. 95; Pl.'s 56.1 Resp. ¶ 82.) Brewington "asked [Tannenbaum] if [he] would come in and lend [his] expertise in the field of medicine to help review these cases and to assist in locating expert witnesses for those cases." (Defs.' Tannenbaum Tr. 26:22–24.) Tannenbaum "review[ed] the medical records" to assist with timeline or chronology preparation, assisted with "locat[ing] an appropriate expert in prison medicine" and the preparation of any expert witness disclosures, and "participated in group phone calls with [] Brewington and the expert." (*Id*. 28:14–29:1.) Tannenbaum did not enter an appearance in any of these four cases. (*Id*. 34:6–9.) However, Williams attests that she spoke with Tannenbaum "[a]lmost every day" regarding any of these four matters, and that Tannenbaum "directed [her] to complete assignments and tasks related to" them. (Williams Decl. ¶¶ 33–34.)

The Brewington Firm did not provide Tannenbaum a salary or Form W-2. (2025 Tannenbaum Decl. ¶ 10.) Instead, the TBS Firm billed the Brewington Firm for the services of Tannenbaum and his paralegal on each of the four cases in which Tannenbaum assisted. (*Id*. ¶¶ 13, 14.) Tannenbaum received payment for his work on only one of the four matters. (*Id*.

¶ 15.) The Brewington Firm provided that payment by check addressed to the TBS Firm in 2023. (*Id*.; 2023 Tannenbaum Decl. ¶ 9.)

Tannenbaum did not receive health insurance or other employment benefits through the Brewington Firm. (2025 Tannenbaum Decl. ¶ 11.) Instead, he received his health and legal malpractice insurance through the TBS Firm. (2023 Tannenbaum Decl. ¶ 23.) Moreover, Tannenbaum used his TBS Firm email address when corresponding with Brewington and other members of the Brewington Firm. (*See, e.g.*, ECF Nos. 100-17 to 100-20.)

## II.     Oscar Holt

Oscar Holt joined the Brewington Firm on April 23, 2018 in an "of counsel" role. (April 23, 2018 Firm Welcome Memorandum, ECF No. 100-2 at 2.) In a firmwide memorandum, Brewington introduced Holt as follows:

> Mr. Holt will be joining our office as a member of the legal staff in an of counsel role.
> . . .
> Commonly referred to as "Professor", he is an Associate Professor of Criminal Justice and Law at St. John's University, Jamaica, New York. He is a very experienced trial lawyer and, while limited, he will continue to maintain his private practice of law. His area of specialty most recently has been criminal defense, but he is eager to learn more about other aspects of our work. . . . His joining our office is a wonderful plus for us all.
> . . .
> Mr. Holt, will be occupying the office directly across from conference room 2. His hours will vary depending on his current teaching schedule, but his presence will help to increase our legal capacity on numerous levels, including evaluation of cases (legally and factually), in house instruction and case and trial preparation.

(*Id*.)

At the time he joined the Brewington Firm in 2018, Holt was teaching full-time at St. John's University, where he maintained a regular teaching schedule until sometime in 2020. (November 2, 2023 Declaration of Oscar Holt ("2023 Holt Decl.") ¶ 5, ECF No. 96-12.) The parties dispute precisely when in 2020 Holt's full-time role at St. John's terminated. It is undisputed that Holt taught full-time at St. John's until the spring semester of 2020. (*Id*.; Pl.'s

8

56.1 Resp. ¶ 12.) Holt maintains that he is a "retired full-time tenured member of the undergraduate faculty" at the university and "coach of the university's mock trial team" and that he "retired from teaching on September 30, 2020." (April 1, 2025 Declaration of Oscar Holt ("2025 Holt Decl.") ¶ 10, ECF No. 94.)

Holt has owned and operated his own law practice since 1989, the Law Office of Oscar Holt III. (*Id*. ¶ 11.) Through his law practice, Holt specialized in criminal defense work. (*Id*. ¶ 12.) Around the time he joined the Brewington Firm, he had been "considering winding down [his] busy practice and trying to figure out what [he] wanted to do with [his] career." (2023 Holt Decl. ¶ 9.) Brewington testified in deposition that he encouraged Holt to join the Brewington Firm, telling him, "[t]here's a lot that people can learn from you," and suggesting, "[c]ome and go as you please . . . to give some wisdom to younger lawyers."[2] (Defs.' Excerpts from Deposition Transcript of Frederick Brewington ("Defs.' Brewington Tr.") 227:19–228:7, ECF No. 96-6.) Holt attests that joining the Brewington Firm was "an opportunity to see my practice through a new lens and I welcomed the opportunity to have a place to hang my hat when I wanted to while being in a collegial professional environment." (2023 Holt Decl. ¶ 9.)

The Brewington Firm added Holt to its website and letterhead. (*See* Holt Website Biography, ECF No. 100-4; Employment Letter from Frederick Brewington, ECF No. 100-15.) A September 18, 2023 screenshot of Holt's New York State Unified Court System profile shows that Holt listed his "Business Name" as the "Law Office of Oscar Holt III" but provided the Brewington Firm's office address as the "Business Address" and listed only his Brewington Firm email address. (Holt New York State Unified Court System Profile, ECF No. 100-22.) On

---

[2] Williams challenges Brewington's recitation of these statements as inadmissible hearsay. (Pl.'s 56.1 Resp. ¶ 23.)

January 4, 2019, Holt signed an acknowledgment form affirming that he had received the Brewington Firm's policy statement on harassment and sexual harassment and that he understood his responsibilities under the policy. (*See* Sexual Harassment Policy Receipt and Acknowledgement Form, ECF No. 100-21.)

Holt had his own office at the Brewington Firm's office suite. (Pl.'s Holt Tr. 63:15–65:7, ECF No. 100-5.) He purchased certain materials for his own use—a computer, a monitor, pens, and paperclips—to accommodate his own preferences with respect to these items. (Defs.' Excerpts from Deposition Transcript of Oscar Holt ("Defs.' Holt Tr.") 66:12–67:3, 69:6–11, ECF No. 96-7.) Holt used a Brewington Firm email address in connection with his work. (*See, e.g.*, ECF No. 100-16 (notices of appearance by Holt listing his Brewington Firm email address).)

Holt attests that in 2020 and 2021, he set his own schedule and regularly worked from his office at the Brewington Firm's office suite around three days per week, arriving at around noon or 1:00 p.m. (2023 Holt Decl. ¶ 13.) By contrast, Williams attests that Holt "typically worked in the office Mondays through Fridays from around 10:00 a.m. to around 5:00 p.m. each day." (Williams Decl. ¶ 7.) Holt regularly attended the Brewington Firm's weekly meetings. (*Id*. ¶ 9; 2023 Holt Decl. ¶ 14.)

Holt worked on criminal and civil cases handled by the Brewington Firm, although he had expressed a "preference" to Brewington that he focus on criminal cases. (2025 Holt Decl. ¶ 15; Defs.' Holt Tr. 75:22–24; Pl.'s 56.1 Resp. ¶¶ 30–31, 35.) Williams attests that Brewington assigned cases to Holt. (Williams Decl. ¶ 12.) By contrast, Holt attests that he had "discretion to choose which matters" he worked on for the Brewington Firm and "which tasks" he performed

10

on such matters, and that he was "not assigned cases." (2025 Holt Decl. ¶ 13.) Holt attests that "Mr. Brewington was the lead" on any cases on which he worked. (2023 Holt Decl. ¶ 17.)

Holt worked on four different civil matters at the Brewington Firm in 2020 and 2021. (Defs.' Holt Tr. 76:6–16, 84:5–86:2, 92:20–93:24.) Holt testified in deposition that "[he] was asked to assist and [] agreed to assist on those cases." (Pl.'s Holt Tr. 76:10–13.) In two of these matters, Holt filed notices of appearance and listed his Brewington Firm email and office address below his signature line. (*See* Holt Appearance of Counsel Forms, ECF No. 100-16 at 2–3.) In one of the four matters, Holt's only contribution was to attend a scheduling conference. (Defs.' Holt Tr. 84:5–87:4.) By contrast, Holt was heavily involved in the *Gonzalez/Lazo* matter, which ultimately went to trial in 2023 with Holt as the second chair. (*See* Pl.'s Holt Tr. 49:25–51:20; 88:22–89:19.) In that matter, Holt testified that his role was to "assist[] Mr. Brewington with whatever he needed." (*Id*. 51:15–20.)

In another matter, Holt's responsibilities included discussing mediation strategy with Brewington, preparing the client, and attending the mediation with Brewington. (*Id*. 93:2–24.) After that matter settled, the Brewington Firm compensated Holt $5,500 by a check issued on March 29, 2021. (*Id*. 94:3–94:23; *see* Check from Law Offices of Frederick K. Brewington to Oscar Holt, ECF No. 96-4.) That check was labeled "Share of Atty Fees—Work done on Danzy." (*See* ECF No. 96-4.) Holt was surprised to receive the check, as he and Brewington had not entered into any agreement providing that Holt would be compensated for his work on the matter. (Defs.' Holt Tr. 94:24–96:2.) Holt did not receive any other compensation from the Brewington Firm in 2020 or 2021. (Defs.' 56.1 Statement ¶ 44; Pl.'s 56.1 Resp. ¶ 17.) Nor did the Brewington Firm provide Holt a Form W-2. (2025 Holt Decl. ¶ 7.)

11

Holt testified in a deposition that he did not instruct any employees, support staff, or attorneys of the Brewington Firm to draft documents for him. (Defs.' Holt Tr. 70:3–7.) Nevertheless, in connection with his work for the Brewington Firm, Holt relied on the firm's support staff for assistance with sending, printing, scanning, and reviewing documents, and with utilizing technology. (*Id*. 67:16–69:5.) For example, Rosemarie Walker, Brewington's assistant, testified that she would prepare case notes and letters to criminal defendant clients represented by Holt at Brewington's instruction. (Pl.'s Excerpts from Deposition Transcript of Rosemarie Walker ("Pl.'s Walker Tr.") 131:17–134:24, ECF No. 100-10.)[3]

## PROCEDURAL HISTORY

Williams commenced this action on February 23, 2022, and filed an Amended Complaint on May 31, 2022. (ECF Nos. 1, 17.) The Amended Complaint alleges that she was sexually harassed "by multiple male employees, one of whom not only stalked and harassed [her], but also harassed, assaulted, and raped one of her colleagues." (Am. Compl. ¶ 42.) The Amended Complaint brings various claims against Defendants under Title VII and the NYSHRL, including claims against all Defendants for sexual harassment, discriminatory termination, and retaliation, as well as additional claims against Brewington and Lockett for aiding and abetting sexual harassment, discriminatory termination, and retaliation. (*Id.* ¶¶ 104, 113–14, 167–95.) It further alleges that "[a]t all relevant times, the [Brewington] Firm was Plaintiff's 'employer' within the meaning of all relevant statutes and regulations." (*Id*. ¶ 23.) According to the Amended Complaint, Williams filed a Charge of Discrimination with the Equal Employment Opportunity Commission, in which she asserted that the Brewington Firm employed fifteen or more

---

[3] The Court takes note of defense counsel's objection to the question that elicited this response. (Pl.'s Walker Tr. 131:19–20.)

employees in 2020 and 2021,[4] a time period that includes the calendar year of Williams' June 14, 2021 termination and the prior calendar year. (*Id.* ¶ 16; First Opp'n at 13, ECF No. 47; ECF No. 47-19.)

Defendants filed an Amended Answer to the Amended Complaint on August 5, 2022. (ECF No. 24.) On August 8, 2022, Magistrate Judge Anne Shields directed the parties to conduct discovery concerning whether the Brewington Firm "is an 'employer' as defined by Title VII . . . ." (Elec. Order, Aug. 8, 2022.) Following the exchange of pre-motion conference letters and an August 21, 2023 conference before District Judge Gary Brown, to whom this case was previously assigned, I issued a scheduling order governing Defendants' original Rule 56 motion for summary judgment. As addressed in the prior Memorandum and Order, in violation of Judge Brown's Order, Defendants filed a combined motion to dismiss the Amended Complaint under Rules 12(b)(1) and (b)(6) and motion for summary judgment under Rule 56, in which they argued that Title VII did not apply to the Brewington Firm during the time period at issue in Williams' claims because it did not employ the threshold number of employees required by the statute. (First Mot., ECF No. 46.) Williams opposed, and the motions were fully briefed. (*See* ECF Nos. 47, 48).

## I.    The Memorandum and Order Denying Defendants' First Motion for Summary Judgment

On March 1, 2024, I issued the Memorandum and Order, in which I dismissed Defendants' Rule 12(b)(1) and 12(b)(6) motions as moot and, in the alternative, denied those

---

[4] The EEOC Charge of Discrimination form asks complainants to identify the number of employees at the employer organization, but does not ask for a corresponding time period such that it would be clear that the organization employed fifteen or more individuals for twenty or more weeks in a given year as required for Title VII to apply. (*See* ECF No. 47-19.)

motions on the merits, denied Defendants summary judgment under Rule 56, and ordered the parties to conduct limited, expedited discovery concerning whether Title VII applied to the Brewington Firm in 2020 and 2021—the years that the parties concede is the relevant timeframe for Title VII to apply to Williams' claims. *See Williams v. Law Offices of Frederick K. Brewington*, No. 2:22-cv-983, 2024 WL 896883 (E.D.N.Y. 2024).[5] After close review of the factual record, I identified each individual employed by the Brewington Firm during each week of 2020 and 2021 based on the undisputed evidence in order to identify any genuine disputes of material fact as to whether the Brewington Firm had at least fifteen employees for twenty or more weeks of 2020 or 2021 as required for Title VII to apply to the firm. *Id.* at *15; 42 U.S.C. § 2000e(b). Those charts are reproduced here in Appendix A and Appendix B.

I concluded that, without including Holt or Tannenbaum as employees, "there are seven weeks in 2020 when the [Brewington] Firm had fifteen employees, eight weeks when the [Brewington] Firm had at least fourteen employees, and eighteen weeks when the [Brewington] Firm had at least thirteen employees." *Id.* at *7; *see also* Appendix A *infra*. I also concluded that,

---

[5] Williams' claims concern Defendants' alleged conduct from 2020 to 2021. (*See generally* Am. Compl. ¶¶ 45–195). Pursuant to the text of Title VII, the Brewington Firm must qualify as a Title VII employer in 2019 or 2020 for claims concerning conduct alleged to take place in 2020, and must qualify as a Title VII employer in 2020 or 2021 for claims concerning conduct alleged to take place in 2021. *See* 42 U.S.C. § 2000e(b) (defining "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks *in the current or preceding year*, and any agent of such person" subject to certain exceptions inapplicable to this action) (emphasis added). The parties concede, however, that the viability of Williams' Title VII claims turns on whether the Brewington Firm had the statutorily-required number of fifteen employees in either 2020 or 2021. (*See generally* Transcript of August 21, 2023 Conference before Judge Brown at 3 (where Williams' counsel states that "2020 and 2021 [are] the applicable years related to Title 7 applicability"); *id.* at 5 (where Defendants' counsel frames the issue for resolution on the first motion for summary judgment as whether "there were not more than 15 employees [at the Brewington Firm] during any 20 week period in 2020 or 2021"); *see also* First Mot., ECF No. 46 (only addressing the number of Brewington Firm employees in 2020 and 2021); First Opp'n, ECF No. 47 (same).)

without including Holt or Tannenbaum as employees, "there were three weeks in 2021 when the [Brewington] Firm had eighteen employees, twelve weeks when the [Brewington] Firm had fourteen employees, and twenty-three weeks when the [Brewington] Firm had thirteen employees." *Williams*, 2024 WL 896883 at *7; *see also* Appendix B *infra*.

Furthermore, I applied factors set forth in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), and *E.E.O.C. v. Johnson & Higgins, Inc.*, 91 F.3d 1529 (2d Cir. 1996), to the undisputed facts in the record to determine whether Williams had raised material questions of fact as to whether Tannenbaum and Holt were employees of the Brewington Firm in either 2020 or 2021. I concluded that "the record gives rise to numerous genuine disputes of material fact as to whether the [Brewington] Firm had the requisite number of employees" for twenty weeks in "either 2020 or 2021," specifically because there were genuine disputes as to "whether Holt and/or Tannenbaum were unpaid volunteers or employees for the purpose of Title VII" during those years. *Williams*, 2024 WL 896883 at *5. With respect to Holt, I identified material questions concerning "how much control Defendants had over the cases Holt worked on, how long Holt listed the [Brewington] Firm's address as the address for his own firm on his New York State Unified Court System profile, when the [Brewington] Firm added Holt to its website and letterhead," "whether Holt 'was regularly employed by a separate entity' . . . during the second half of 2020 and in 2021," and "whether Holt 'reported to someone higher in the hierarchy.'" *Id*. at *9; *see also id*. at *8–10. With respect to Tannenbaum, I identified material questions concerning "whether the [Brewington] Firm provided Tannenbaum compensation for his work on medical malpractice cases," "whether Tannenbaum worked with the [Brewington] [F]irm on medical malpractice cases that were 'part of the regular business' of the [Brewington] Firm in 2020 or 2021," and "whether the [Brewington] Firm exercised control over [] 'the

15

manner and means' by which Tannenbaum worked on those cases," among other things. *Id*. at *11; *see also id*. at *10–13. I concluded that additional discovery on these issues was necessary and permitted the parties "to engage in document discovery and depositions of Holt, Tannenbaum, and Brewington using the *Reid* and *Johnson & Higgins* factors as guidance." *Id*. at *15; *see also id*. at *13–15.

## II.    Jurisdictional Discovery and the Renewed Summary Judgment Motion

Jurisdictional discovery was scheduled to conclude on June 28, 2024. (Elec. Order, Apr. 17, 2024.) It was later extended and closed on December 20, 2024. (*See* Elec. Order, May 15, 2024; Min. Entry, July 18, 2024.)

On April 3, 2025, Defendants filed a request for a pre-motion conference regarding their anticipated renewed motion for summary judgment on the question of whether Title VII applies to the Brewington Firm and attached a Rule 56.1 Statement and all corresponding exhibits. (ECF No. 91.) On April 7, 2025, Defendants filed a corrected submission of their pre-motion conference request and attached the declaration of Frederick Brewington (ECF Nos. 92 to 96). Attached to the declaration are the following exhibits:

- a July 23, 2019 Offer of Employment from the Brewington Firm to Dana-Simone Williams (ECF No. 96-1);

- a June 14, 2021 Letter of Termination from the Brewington Firm to Dana-Simone Williams (ECF No. 96-2);

- an April 23, 2018 Welcome Memorandum from Frederick Brewington to all Brewington Firm employees (ECF No. 96-3);

- a March 29, 2021 check in the amount of $5,500 from the Brewington Firm to Oscar Holt (ECF No. 96-4);

- a Brewington Firm Employee Handbook, produced during Rosemarie Walker's deposition on December 17, 2024 (ECF No. 96-5);

- excerpts from the transcript of Frederick Brewington's December 16, 2024 deposition (ECF No. 96-6);

- excerpts from the transcript of Oscar Holt's December 18, 2024 deposition (ECF No. 96-7);

- excerpts from the transcript of Precilla Lockett's December 18, 2024 deposition (ECF No. 96-8);

- excerpts from the transcript of Steven Tannenbaum's December 19, 2024 deposition (ECF No. 96-9);

- excerpts from the transcript of Rosemarie Walker's December 17, 2024 deposition (ECF No. 96-10);

- the September 20, 2023 Declaration of Frederick Brewington (ECF No. 96-11);

- the November 2, 2023 Declaration of Oscar Holt (ECF No. 96-12); and

- the November 3, 2023 Declaration of Oscar Holt (ECF No. 96-13).

Defendants also attached to their pre-motion conference request an April 1, 2025 Declaration of Oscar Holt (ECF No. 94), and a March 30, 2025 Declaration of Steven Tannenbaum (ECF No. 95).

On April 29, 2025, Williams filed a response accompanied by a Rule 56.1 Counterstatement and the Declaration of Taylor J. Crabill. (ECF Nos. 98 to 100.) Attached to the declaration are the following exhibits:

- the October 20, 2023 Declaration of Dana-Simone Williams (ECF No. 100-1);

- an April 23, 2018 Welcome Memorandum from Frederick Brewington to all Brewington Firm employees (ECF No. 100-2);

- an April 23, 2018 email from Frederick Brewington to Hank Russell and Rosemarie Walker regarding Oscar Holt's welcome announcement (ECF No. 100-3);

- an undated screenshot of Oscar Holt's biography on the Brewington Firm's website (ECF No. 100-4);

17

- excerpts from the transcript of Oscar Holt's December 18, 2024 deposition (ECF No. 100-5);

- a March 29, 2021 check in the amount of $5,500 from the Brewington Firm to Oscar Holt (ECF No. 100-6);

- excerpts from the transcript of Frederick Brewington's December 16, 2024 deposition (ECF No. 100-7);

- excerpts from the transcript of Albert Manuel's December 16, 2024 deposition (ECF No. 100-8);

- excerpts from the transcript of Casey Wilson's December 13, 2024 deposition (ECF No. 100-9);

- excerpts from the transcript of Rosemarie Walker's December 17, 2024 deposition (ECF 100-10);

- excerpts from the transcript of Steven Tannenbaum's December 19, 2024 deposition (ECF No. 100-11);

- emails dated July 15, 2021 between Albert Manuel, Steven Tannenbaum, and Frederick Brewington (ECF No. 100-12);

- the April 28, 2023 Declaration of Gabrielle Leparik (ECF No. 100-13);

- Defendants' February 15, 2023 Supplemental Response to Plaintiff's First Set of Interrogatories Related to Title VII Applicability (ECF No. 100-14);

- a February 21, 2021 Offer of Employment from the Brewington Firm to Gabrielle Leparik (ECF No. 100-15);

- Appearance of Counsel forms for Oscar Holt dated September 21, 2020, July 2, 2021, and May 25, 2022 and filed in the U.S. District Courts for the Eastern and Southern Districts of New York (ECF No. 100-16);

- emails dated May 14, 2021 between Albert Manuel, Steven Tannenbaum, Lavern VanOmmeren, and Frederick Brewington (ECF No. 100-17);

- an email dated November 3, 2020 from Steven Tannenbaum to Albert Manuel regarding a $900 invoice for an expert witness (ECF No. 100-18);

- emails dated September 28, 2021, October 1, 2021, and October 4, 2021 between Frederick Brewington, Ryan Herrington, Steven Tannenbaum, and Maria Dyson (ECF No. 100-19);

- emails dated August 19, 2021 and August 20, 2021 between Steven Tannenbaum, Maria Dyson, Frederick Brewington, Dennis Swanson, Albert Manuel, Cobia Powell, and Precilla Lockett (ECF No. 100-20);

- a January 4, 2019 Sexual Harassment Policy Receipt and Acknowledgement Form signed by Oscar Holt (ECF No. 100-21); and

- a September 18, 2023 screenshot of Oscar Holt's New York State Unified Court System profile (ECF No. 100-22).

On May 6, 2025, I waived the pre-motion conference requirement and set a briefing schedule on Defendants' renewed summary judgment motion. (Elec. Order, May 6, 2025.) On June 24, 2025, pursuant to the recommended bundling procedure set forth in my Individual Rules, Defendants filed their fully-briefed Renewed Motion for Summary Judgment, which includes their principal brief (ECF No. 103-1), Williams' opposition brief (ECF No. 103-2), and Defendants' reply (ECF No. 103-3).

## LEGAL STANDARDS

### I.    Summary Judgment Standards

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material question of fact. *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022).[6] "A fact is material if it might affect the outcome of the suit under the governing law." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023), *rev'd on other grounds,* 604 U.S. 693 (2025) (citing *Anderson v.*

---

[6] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). Under this standard, if the movant meets its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial" in order to avoid summary judgment. *McKinney*, 49 F.4th at 745–46 (quoting *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)). The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-cv-1220, 2024 WL 3264125, at *2 (2d Cir. July 2, 2024) (summary order). Nor may it rely on "conclusory statements or mere allegations . . . ." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 228 (2d Cir. 2024).

A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant . . . only if we conclude that on the record presented, considered in the light most favorable to the non-movant . . . no reasonable jury could find in the [non-movant]'s favor."). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983); *see also Jones v. City of New York*, 603 F. App'x 13, 14 (2d Cir. 2014) (holding that

20

summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

## II.    Standards for Determining Whether an Entity is a Title VII "Employer"

Under Title VII, the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, and any agent of such person" subject to certain exceptions inapplicable to this action. 42 U.S.C. § 2000e(b). Because the statutory text provides no further definition, the common law of agency governs the meaning of "employer" and "employee" in Title VII cases. *United States v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004). To determine whether an employer-employee relationship exists with respect to so-called "independent contractors," a court considers the non-exclusive factors set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), which include:

> The hiring party's right to control the manner and means by which the product is accomplished . . . ; the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party.

*Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) (quoting *Reid*, 490 U.S. at 751–52) (brackets omitted); *see also Jones v. Mega Fitness*, No. 94-cv-8393, 1996 WL 267941, at *3 (S.D.N.Y. May 21, 1996) (considering the *Reid* factors to determine whether staff persons were independent contractors or employees for purposes of Title VII). "[I]n balancing the *Reid* factors, courts must take care to disregard those factors that, in light of the facts of a particular case, are (1) irrelevant or (2) of indeterminate weight—that is, those factors that are essentially in equipoise and thus do not meaningfully cut in favor of either the conclusion that the worker is an

21

employee or the conclusion that he or she is an independent contractor." *Horror Inc. v. Miller*, 15 F.4th 232, 248–49 (2d Cir. 2021) (internal quotation marks omitted).

Though no single factor is dispositive, the "greatest emphasis" should be placed on the first factor—that is, the extent to which the hiring party controls the "manner and means" by which the worker completes assigned tasks. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000). The Second Circuit has also emphasized that the following factors "will almost always be relevant [to the *Reid* analysis] and should be given more weight in the analysis, because they will usually be highly probative of the true nature of the employment relationship." *Horror Inc.*, 15 F.4th at 249. "Those factors are: (1) the hiring party's right to control the manner and means of creation; (2) the skill required [of the hired party]; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party." *Id*.

The Second Circuit has also applied three factors, initially set forth in *E.E.O.C. v. Johnson & Higgins, Inc.*, 91 F.3d 1529 (2d Cir. 1996), to determine whether a person holding a higher-level executive position is an "employee" for purposes of the anti-discrimination laws, namely:

(1) whether the executive has undertaken traditional employee duties;
(2) whether the executive was regularly employed by a separate entity; and
(3) whether the executive reported to someone higher in the hierarchy.

*Frederick v. United Bhd. of Carpenters & Joiners of Am. (UBCJA) Loc. 926*, 558 F. App'x 83, 85 (2d Cir. 2014) (summary order); *Drescher v. Shatkin*, 280 F.3d 201, 203–04 (2d Cir. 2002).

## DISCUSSION

Defendants seek summary judgment on Williams' Title VII claims under Rule 56, arguing that undisputed facts in the record establish that the Brewington Firm did not meet the

numerical threshold to qualify as an "employer" for Title VII coverage during the timeframe of Williams' claims. The statute applies to an employer only if it employs "fifteen or more employees for each working day in each of twenty or more calendar weeks *in the current or preceding* calendar year." 42 U.S.C. § 2000e(b) (emphasis added). As the parties acknowledge, 2020 and 2021 are the years relevant to Williams' Title VII claims in light of her June 14, 2021 termination. *Williams*, 2024 WL 896883 at *5; *see id*. at *6 (noting that "[e]ach party has compiled a chart purporting to set forth information produced by Defendants in discovery concerning the number of employees at the [Brewington] Firm during [2020 and 2021] . . .").[7]

As set forth in the Memorandum and Order resolving Defendants' first summary judgment motion, "Williams need not show that the [Brewington] Firm met Title VII's numerical threshold in both 2020 and 2021. She simply must show a genuine question of fact as to whether the [Brewington] Firm met the fifteen-employee threshold during twenty weeks of either year." *Id*. at *7. As I explained:

> To break it down more specifically, because it is undisputed that the [Brewington] Firm had fifteen employees for seven weeks in 2020, summary judgment is unwarranted if the record demonstrates a genuine question of fact as to whether either Holt or Tannenbaum was an employee during the eight weeks of 2020 when the [Brewington] Firm had fourteen employees, and as to whether both Holt and Tannenbaum were employees during any five of the eighteen weeks in 2020 when the [Brewington] Firm had at least thirteen employees. Similarly, because it is undisputed that the [Brewington] Firm had eighteen employees for three weeks in 2021, summary judgment is unwarranted if the record shows a question of fact as to whether either Holt or Tannenbaum was an employee during the twelve weeks of 2021 when the [Brewington] Firm had fourteen employees, and as to whether both Holt and Tannenbaum were employees during any five of the twenty-three weeks in 2021 when the [Brewington] Firm had at least thirteen (13) employees.

*Id*. at *7 n.5.

---

[7] *See also supra* note 4.

For the reasons set forth below, the undisputed facts show that Tannenbaum was not a Title VII "employee" of the Brewington Firm at any point in 2020 or 2021 under the tests set forth in *Reid*, 490 U.S. 730, and *Johnson & Higgins*, 91 F.3d 1529. By contrast, the record gives rise to a genuine dispute of material fact as to whether Holt was a Brewington Firm employee from June through December of 2020 and in 2021. Nevertheless, because Tannenbaum was not an employee in either year, the undisputed facts show that the Brewington Firm did not have fifteen or more employees in twenty weeks of either 2020 or 2021. This conclusion follows because, as explained in detail in the Memorandum and Order and above, *both* Tannenbaum *and* Holt must be shown to have been employees "during any five of the eighteen weeks in 2020 when the [Brewington] Firm had at least thirteen employees" in order for the Brewington Firm to have employed fifteen or more people in twenty weeks of 2020. *Williams*, 2024 WL 896883 at *7 n.5. Similarly, *both* Tannenbaum *and* Holt must be shown to have been employees "during any five of the twenty-three weeks in 2021 when the [Brewington] Firm had at least thirteen (13) employees" in order for the Brewington Firm to have employed fifteen or more employees in twenty weeks of 2021. *Id*.

Thus, viewing the record in the light most favorable to Williams and drawing all reasonable inferences in her favor, and even assuming that Holt was an employee for all of 2020 and 2021, the Brewington Firm only employed fifteen or more employees for at most fifteen weeks in 2020 and fifteen weeks in 2021, which is below the twenty weeks required in either year for Title VII to apply. *See* 42 U.S.C. § 2000e(b). To be clear, Williams could survive summary judgment by raising a genuine dispute of material fact as to whether Tannenbaum was an employee in *either* 2020 or 2021, but she has failed to meet her burden with respect to *both*

years. Accordingly, summary judgment is awarded to the Brewington Firm on Williams' Title VII claims.

I.    **The *Reid* Factors are More Pertinent than the *Johnson & Higgins* Factors to the Determination of Tannanbaum and Holt's Employment Status**

As discussed above, the Second Circuit articulated two different tests for determining whether an individual is an "employee" in *Reid*, 490 U.S. 730, and *Johnson & Higgins*, 91 F.3d 1529, which raises the question of whether one or both of these tests apply in resolving the question of Tannenbaum and Holt's employment status in 2020 and 2021. In *Drescher v. Shatkin*, 280 F.3d 201, 203 (2d Cir. 2002), the Second Circuit provided guidance on this issue, and recognized that "the classic agency law tests for determining employee status, as exemplified by *Reid* . . . [is] pertinent to determine whether an employer has 15 employees and is therefore covered by the statute." *Drescher*, 280 F.3d at 205; *see also Knight v. State Univ. of New York at Stony Brook*, 880 F.3d 636, 642 (2d Cir. 2018) ("[T]he *Reid* factors are the method of analysis Congress intended to require for determining employee status generally under Title VII."). The Second Circuit emphasized that the question at issue in *Reid*—whether or not certain individuals were employees or independent contractors—"was somewhat different" from the question presented in *Johnson & Higgins*, where the company's officers and directors clearly were not independent contractors. *Drescher*, 280 F.3d at 203. Rather, *Johnson & Higgins* posed the question of whether the corporate officers and directors "were so high in the company's policymaking hierarchy that they should be considered as akin to the employer, rather than employees." *Id*.[8] The Second Circuit concluded that the corporate directors were "employees"

_____

[8] The question at issue in *Johnson & Higgins* was whether directors of a company were "employees" protected by the Age Discrimination in Employment Act of 1967 (ADEA)—not

under the Age Discrimination in Employment Act of 1967 because "although those persons sat on the board of directors, none of them individually had the power or ability to change what they might complain of. A majority of the board could alter a company policy; but no individual director could do so." *Id*. at 204. By contrast, in *Drescher*, the respondent was *not* an employee because he was the corporation's president, sole director, and sole shareholder, and therefore had "the power to make or alter the rules and policies to which he is theoretically subject and to fire or control persons whose conduct might violate his rights." *Id*. Thus, the *Johnson & Higgins* test has been used to "assess[] whether *a higher-level executive*" such as the officers and directors of a corporation—"has assumed duties that make him or her an employee for purposes of the anti-discrimination laws." *Frederick*, 558 F. App'x at 85 (emphasis added).

Here, Tannenbaum and Holt were not "so high in the [Brewington Firm's] policymaking hierarchy" that they "should be considered as akin to the employer, rather than [an] employee[.]" *Drescher*, 280 F.3d at 203. No party asserts that either Tannenbaum or Holt had any policymaking authority or authority to hire and fire Brewington Firm employees. Nor did Tannenbaum or Holt occupy a role comparable to that of an officer or director, such as partner or senior-level manager. Rather, the record is undisputed that Holt and Tannenbaum joined the Brewington Firm in "of counsel" roles. (ECF No. 100-2 at 2; Defs.' Tannenbaum Tr. 14:17–15:7.) And, as discussed below, Tannenbaum continued to work as a principal of his own law firm while evaluating referrals from the Brewington Firm and working on four discrete matters

---

whether the company at issue had the requisite number of "employees" such that the ADEA applied. *Johnson & Higgins*, 91 F.3d at 1537–40. In *Drescher*, the Second Circuit concluded, however, that the two questions were essentially the same: "The persons who are 'employees' empowered to enforce the statute against their employers are the ones to be counted as 'employees' in determining whether the employer has 15 or more employees." 280 F.3d at 206.

for the Brewington Firm. (*See* 2023 Tannenbaum Decl. ¶ 6; 2025 Tannenbaum Decl. ¶ 13; Defs.'

Tannenbaum Tr. 26:14–29:10, 39:7–40:4, 62:25–63:5; Pl.'s 56.1 Resp. ¶ 82.) Williams does not

argue, much less show, that Holt served as a higher-level executive as an "of counsel" at the

Brewington Firm, or that he had any policymaking authority comparable to that of the officers

and directors in *Drescher* and *Johnson & Higgins*. Therefore, the *Reid* factors are more pertinent

than the *Johnson & Higgins* factors to the determination of whether Tannenbaum and Holt were

employees of the Brewington Firm. For this reason, I start with an analysis of the *Reid* factors for

each individual and place greater weight on that test. Nevertheless, I also consider the *Johnson &*

*Higgins* factors with respect to Tannenbaum and Holt, although I give that test lesser weight.

## II.    Steven Tannenbaum Was Not a Title VII "Employee" in 2020 or 2021

Viewing the record in the light most favorable to Williams, an application of the *Reid* and

*Johnson & Higgins* factors to the undisputed facts demonstrates that Tannenbaum was not a Title

VII "employee" of the Brewington Firm at any point in either 2020 or 2021.

### A.    The *Reid* Factors

The *Reid* factors—including the five *Reid* factors recognized as most significant by the

Second Circuit—overwhelmingly weigh in favor of finding that Tannenbaum was not an

employee of the Brewington Firm at any point in 2020 or 2021. Specifically, the first, second,

fourth, sixth, seventh, eighth, ninth, twelfth, and thirteenth factors of the *Reid* analysis suggest

that Tannenbaum was *not* an employee, whereas the remaining factors—the third, fifth, tenth,

and eleventh—are inconclusive, neutral, or weigh in the opposite direction. I first address the

factors showing that Tannenbaum was not an employee.

The first factor, which requires considering the "hiring party's right to control the manner

and means by which the product is accomplished," receives the "greatest emphasis" in the *Reid*

factors analysis. *Eisenberg*, 237 F.3d at 114. This added weight is due "because, under the common law of agency, an employer-employee relationship exists if the purported employer controls or has the right to control both the result to be accomplished and the manner and means by which the purported employee brings about that result." *Id*. (internal citations omitted). This factor concerns "not merely the right to dictate the outcome of the work, but the right to control the 'manner and means' by which the hiree accomplishes that outcome." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 228 (2d Cir. 2008), *as amended* (Apr. 22, 2008).

The undisputed facts show that the Brewington Firm did not control "the manner and means" of Tannenbaum's work on the assessment of potential medical malpractice matters, his work on cases referred to him by the Brewington Firm, or even his work on the four medical malpractice cases handled by the Brewington Firm to which he contributed in 2020 and 2021. *Id*. Pertinent to consideration of the first *Reid* factor is the context in which Brewington brought Tannenbaum on to assist with four medical malpractice cases handled by the Brewington Firm. During both 2020 and 2021, Tannenbaum was a partner of his own law firm—the TBS Firm— which specializes in medical malpractice cases. (2023 Tannenbaum Decl. ¶¶ 5, 6.) Tannenbaum and Brewington were acquainted with one another through legal professional circles, and Brewington was familiar with Tannenbaum's expertise in medical malpractice litigation. (*Id*. ¶ 9.) In 2019 or 2020, Brewington sought Tannenbaum's assistance with a summary judgment motion in a medical malpractice case. (Defs.' Tannenbaum Tr. 14:17–15:7.) In 2020, the attorney who handled the Brewington Firm's medical malpractice cases passed away and sometime thereafter, the Brewington Firm and Tannenbaum entered into an agreement by which the Brewington Firm would refer potential medical malpractice cases to Tannenbaum so that he could select the cases on which he and the TBS Firm would work. (Defs.' Tannenbaum Tr.

13:10–14:24; 19:18–25; Pl.'s Tannenbaum Tr. 20:11–14.) Tannenbaum agreed to consider evaluating and accepting cases from the Brewington Firm on a case-by-case basis. (*Id*. 19:18–25.) Based on the undisputed record, neither Brewington nor anyone at the Brewington Firm supervised or exercised control over Tannenbaum's evaluation of referrals or his decisions about which potential matters the TBS Firm would accept or reject.

Moreover, even with respect to the four medical malpractice cases handled by the Brewington Firm with Tannenbaum's assistance, the Brewington Firm exercised a limited "right to control the manner and means by which [Tannenbaum's work was] accomplished . . . ." *Felder*, 27 F.4th at 843. While Brewington asked Tannenbaum to work on specific tasks in connection with those four cases—such as asking him to "review the medical records on each case to assist in having a timeline or chronology"—these requests hardly arise to the level of "control" and more closely resemble collaborative work with an outside expert. Pl.'s Tannenbaum Tr. 28:19–20; *see Horror Inc*., 15 F.4th at 250–51 (noting that the hiring party's "'suggestions and contributions' do not necessarily evince the type of comprehensive control that characterizes a traditional employer-employee relationship," but were instead "more consistent with [the hired party's] description of the [work] process as a non-hierarchical, 'creative collaboration and exchange of ideas' between himself and [the hiring party]"). The collaborative nature of the relationship is underscored by the fact that Tannenbaum's contributions were focused on his area of expertise, which includes working with medical records and medical experts. Although Tannenbaum and Williams acknowledge that Tannenbaum's assistance in these four cases were "restricted to . . . those particular areas in which Mr. Brewington asked [Tannenbaum] to lend [his] assistance," Brewington nevertheless exercised only limited control over Tannenbaum's work. (Pl.'s Tannenbaum Tr. 29:8–10; Pl.'s 56.1 Resp. ¶ 82.)

29

Finally, the Brewington Firm exercised minimal to no control over Tannenbaum's evaluation of potential medical malpractice matters referred to him by the Brewington Firm or his recommendations for next steps on the cases that Tannenbaum determined the TBS Firm would not accept. With respect to the latter, Tannenbaum made recommendations as to whether the Brewington Firm should take on these potential cases and wrote "suggested list[s] of what needed to be done," which included suggestions about future filings, potential experts, records requests, and other guidance about the "proper procedures to be followed in [] litigating a medical malpractice case." (Pl.'s Tannenbaum Tr. 54:12–55:14.) Indeed, Williams attests that Tannenbaum made recommendations as to which medical malpractice matters the Brewington Firm should take on. (*See* Pl.'s 56.1 Resp. ¶ 103 ("Tannenbaum would then inform Williams of his decision about whether the [Brewington] Firm should take on the potential medical malpractice matter." (citing Williams Decl. ¶¶ 28–29).) Where Brewington did provide directions to Tannenbaum, it was most often in the form of asking Tannenbaum to lend his advice or expertise to members of the Brewington Firm. (*See, e.g.*, Pl.'s 56.1 Resp. ¶ 110 ("When asked by Brewington, Tannenbaum 'provided guidance to attorneys at the [F]irm related to the Brewington law firm's cases, including Albert Manuel[.]' In 2020 and 2021, Brewington asked Tannenbaum for advice related to the Brewington Firm's cases and Tannenbaum would provide Brewington with advice." (citing Pl.'s Tannenbaum Tr. 55:2–59:13)).)

The second *Reid* factor, "the skill required," also casts Tannenbaum in a light more akin to an independent contractor than an employee and is among the most important in the *Reid* test. *Felder*, 27 F.4th at 843. "The level of skill required of the hired person weighs in favor of independent contractor status" when the hiring party "hired the [individual] because he himself could not" perform the requisite tasks. *Langman Fabrics, a div. of Blocks Fashion Fabrics, Inc.*

*v. Graff Californiawear, Inc.*, 160 F.3d 106, 113 (2d Cir.), *amended*, 169 F.3d 782 (2d Cir. 1998). The Second Circuit has found those in "highly-skilled" professions to be independent contractors, such as "architects, photographers, graphic artists, drafters, and . . . computer programmers." *See Aymes v. Bonelli*, 980 F.2d 857, 862 (2d Cir. 1992).

Here, all of the relevant individuals are part of the same skilled profession—the practice of law. Nevertheless, it is particularly significant that Tannenbaum had experience and expertise in a designated practice area. Tannenbaum and the TBS Firm specialized in medical malpractice cases, and the Brewington Firm specifically engaged Tannenbaum to assist with intakes, referrals, and cases in this area after its own medical malpractice attorney passed away. (2023 Tannenbaum Decl. ¶¶ 5, 6; Defs.' Tannenbaum Tr. 13:10–20.) Tannenbaum's contributions to the Brewington Firm clearly focused on cases in this practice area—for example, he would provide guidance to Brewington Firm staff about "proper procedures to be followed in [] litigating a medical malpractice case." (Pl.'s Tannenbaum Tr. 54:12–55:14.) The fact that the Brewington Firm sought Tannenbaum's assistance with this discrete subset of intakes and cases suggests that Tannenbaum's role was akin to that of an independent contractor or consultant.

The fourth factor—the "location of the work"—suggests that Tannenbaum was more of an "independent contractor" than an employee because he did not have his own office at the Brewington Firm's suite of offices and therefore did not maintain a frequent presence there as a result. *Felder*, 27 F.4th at 843; Defs.' Tannenbaum Tr. 42:6–12. The Brewington Firm did not mandate Tannenbaum's in-office presence and had limited control over the location of his work. When Tannenbaum was at the Brewington Firm's office suite, he would work out of a conference room—further suggesting that Tannenbaum's contributions were limited and temporary. (*Id*.) While Tannenbaum typically reviewed prospective case files from a Brewington

31

Firm conference room, he would also, on occasion, have someone physically drop off the files at his own law firm's office in Lake Success. (2023 Tannenbaum Decl. ¶ 15.) With respect to matters referred to the TBS Firm by the Brewington Firm. Tannenbaum often held meetings with prospective clients and handled phone calls from the TBS Firm's office. (*Id*. ¶ 18; Defs.' Tannenbaum Tr. 43:24–44:5.) Moreover, even if Tannenbaum did work from the Brewington Firm's office suite twice a week for the duration of Williams' employment, as Williams suggests, this fact does not alter the conclusion that considering the record as a whole, the second *Reid* factor weighs against finding Tannenbaum to be a Brewington Firm employee.

The sixth *Reid* factor, "whether the hiring party has the right to assign additional projects to the hired party," is also given significant weight and here, it weighs against finding that Tannenbaum was an employee. *Felder*, 27 F.4th at 843. In 2020 and 2021, Tannenbaum agreed to assist with four of the Brewington Firm's existing medical malpractice cases upon Brewington's request, but otherwise assessed referrals on a case-by-case basis to determine which ones the TBS Firm would accept. (Defs.' Tannenbaum Tr. 19:18–25, 26:14–29:10; 2025 Tannenbaum Decl. ¶¶ 13, 18, 20.) Of the cases that Tannenbaum rejected on behalf of the TBS Firm, he provided the Brewington Firm a list of recommended action items but did nothing further. (Pl.'s Tannenbaum Tr. 54:12–55:14; 2023 Tannenbaum Decl. ¶ 14.) The record thus demonstrates that Tannenbaum was autonomous in his decision-making about which cases he worked on, whether the case was handled by the Brewington Firm or the TBS Firm.

For the reasons discussed above, the seventh *Reid* factor also weighs in favor of finding that Tannenbaum was not a Brewington Firm employee. The Brewington Firm had minimal "discretion over when and how long" Tannenbaum worked, *Felder*, 27 F.4th at 843.

32

Tannenbaum did not keep regular hours at the office, and the Brewington Firm did not mandate his in-office presence. (*See* Defs.' Tannenbaum Tr. 39:17–40:4.)

The eighth factor, the Brewington Firm's "method of payment," also underscores Tannenbaum's independence. *Felder*, 27 F.4th at 843. Tannenbaum had an arrangement with the Brewington Firm whereby he and his paralegal—a TBS Firm employee—submitted invoices to the Brewington Firm for their work on its behalf. (2025 Tannenbaum Decl. ¶ 14.) Moreover, the Brewington Firm paid Tannenbaum for his work on only one of four matters in which he performed work on behalf of the Brewington Firm in 2020 and 2021. (*Id.* ¶ 15.) That payment was received in 2023 and was made to the TBS Firm—not Tannenbaum himself. (*Id.*; 2023 Tannenbaum Decl. ¶ 9.) Tannenbaum did not receive a salary from the Brewington Firm in either 2020 or 2021. (*Id.* ¶ 7.)

Williams' efforts to suggest that Tannenbaum was an employee of the Brewington Firm in 2020 and 2021 are unpersuasive. Williams leans heavily on evidence that Tannenbaum and the Brewington Firm had a referral arrangement whereby Brewington and Tannenbaum referred cases to one another's respective law firms. (*See* Pl.'s 56.1 Resp. ¶¶ 59, 71.) While it is plausible that Tannenbaum received compensation from the Brewington Firm when the TBS Firm accepted cases referred by the Brewington Firm, the record does not establish that the TBS Firm actually received any such compensation. (*See id.*; Pl.'s Tannenbaum Tr. 20:11–24.) More importantly, however, the mere existence of the referral agreement contradicts the notion that Tannenbaum was working for the Brewington Firm, rather than the TBS Firm, in reviewing and accepting referrals.

Additionally, Tannenbaum's role in "hiring and paying assistants," the ninth *Reid* factor, further weighs against a finding that he was a Brewington Firm employee. *Felder*, 27 F.4th at

33

843. Tannenbaum relied on his own paralegal from the TBS Firm to assist him with the Brewington Firm cases on which he worked. (2025 Tannenbaum Decl. ¶ 14.) Moreover, while Tannenbaum periodically sought the assistance of Brewington Firm staff, Tannenbaum's use of employees from his own firm to further his work on Brewington Firm matters again suggests that his role was akin to that of a consultant or independent contractor, rather than an employee. (Defs.' Tannenbaum Tr. 42:6–12; 2023 Tannenbaum Decl. ¶¶ 10, 22.)

Lastly, the twelfth and thirteenth *Reid* factors—the "provision of employee benefits" and the "tax treatment of the hired party" respectively—are afforded great weight and strongly suggest that Tannenbaum was not a Brewington Firm employee. *Felder*, 27 F.4th at 843; *Horror Inc.*, 15 F.4th at 249. The Brewington Firm did not provide Tannenbaum health insurance or any other employment benefits. (2025 Tannenbaum Decl. ¶ 11.) Instead, he received both benefits and legal malpractice insurance coverage from his own firm, the TBS Firm. (2023 Tannenbaum Decl. ¶ 23.) Nor did the Brewington Firm provide Tannenbaum a W-2 form. (2025 Tannenbaum Decl. ¶ 10.)

The remaining *Reid* factors are either neutral or weigh in favor of finding Tannenbaum to be an employee of the Brewington Firm. Neither party provides any information to adequately address the third *Reid* factor, "the source of the instrumentalities and tools," and therefore I need not consider it. *Felder*, 27 F.4th at 843; *see Horror Inc.*, 15 F.4th at 248–49. The fifth *Reid* factor requires considering "the duration of the relationship between the parties." *Felder*, 27 F.4th at 843. Tannenbaum's relationship with the Brewington Firm was ongoing and did not have any fixed or limited duration, which suggests that the Brewington Firm was Tannenbaum's employer. (*See, e.g.*, 2025 Tannenbaum Tr. ¶ 13) ("Since I met Mr. Brewington roughly five to ten years ago, I have assisted him in a limited Of Counsel capacity . . . ."). The tenth and

eleventh *Reid* factors, which respectively require assessing "whether the work is part of the regular business of the hiring party" and "whether the hiring party is in the business," also suggest that Tannenbaum was an employee of the Brewington Firm in 2020 and 2021. *Felder*, 27 F.4th at 843. It is undisputed that Tannenbaum handled medical malpractice cases and that cases of this kind were a part of the Brewington Firm's "regular business," which is why Brewington sought Tannenbaum's assistance in the first place. (2023 Tannenbaum Decl. ¶ 5; Defs.' Tannenbaum Tr. 13:10–20.) Moreover, with respect to the eleventh *Reid* factor, the Brewington Firm is clearly "in the business" of legal practice. *Felder*, 27 F.4th at 843. Nevertheless, these *Reid* factors are strongly outweighed by the first, second, fourth, sixth, seventh, eighth, ninth, twelfth, and thirteenth *Reid* factors, which show that Tannenbaum was *not* an employee of the Brewington Firm.

For all of these reasons, the *Reid* factors taken together as a whole lead to the conclusion that Tannenbaum was *not* an employee of the Brewington Firm at any point in 2020 or 2021.

## B.   The *Johnson & Higgins* Factors

In determining Tannenbaum's employment status, I place less weight on the *Johnson & Higgins* factors for the reasons discussed above. Nevertheless, like the *Reid* factors, the *Johnson & Higgins* factors also lead to the conclusion that Tannenbaum was not an "employee" of the Brewington Firm in either 2020 or 2021.

The first *Johnson & Higgins* factor is neutral. On the one hand, Tannenbaum undertook some "traditional employee duties" with respect to the four Nassau County Jail medical malpractice cases on which he worked for the Brewington Firm in 2020 and 2021. These included reviewing case files and medical records, meeting with prospective and retained clients; identifying expert witnesses, directing Brewington Firm associates and support staff about next

steps in potential medical malpractice matters that Tannenbaum declined to take on for the TBS Firm, and assisting with the preparation of court filings. (Defs.' Tannenbaum Tr. 26:22–24; 28:14–29:1; 39:7–40:4; 62:25–63:5; Williams Decl. ¶¶ 33–34.) These tasks on the four specific Brewington Firm cases closely resembled "traditional employee duties." Williams Decl. ¶ 29; *Carpenters Loc. 926*, 558 F. App'x at 85. However, on the other hand, Tannenbaum also undertook nontraditional duties—such as deciding which medical malpractice cases the TBS Firm would take on. Moreover, he exercised a large degree of autonomy over his work evaluating medical malpractice referrals received from the Brewington Firm and determining action steps on referrals that he rejected on behalf of the TBS Firm.

Consideration of the second two *Johnson & Higgins* factor—whether the executive was "regularly employed by a separate entity"—also supports the conclusion that Tannenbaum was not an employee of the Brewington Firm at any point in 2020 or 2021. Tannenbaum was "regularly employed by a separate entity"—his own law firm bearing his name: Tannenbaum, Bellantone & Silver, P.C. *Carpenters Loc. 926*, 558 F. App'x at 85; 2023 Tannenbaum Decl. ¶ 6. Tannenbaum has been a salaried partner at the TBS Firm and its prior iterations since 1990. (2023 Tannenbaum Decl. ¶ 6.) Tannenbaum received health insurance and legal malpractice insurance through the TBS Firm and never through the Brewington Firm. (2025 Tannenbaum Decl. ¶ 11; 2023 Tannenbaum Decl. ¶ 23.) Tannenbaum regularly worked at the TBS Firm's office in Lake Success, even when reviewing matters for the Brewington Firm, and did not have his own office space at the Brewington Firm's office suite. (2023 Tannenbaum Decl. ¶¶ 15, 18; Defs.' Tannenbaum Tr. 42:6–12.) Indeed, much of Tannenbaum's work for the Brewington Firm involved deciding which medical malpractice cases the TBS Firm—not the Brewington Firm— would accept. (Pl.'s Tannenbaum Tr. 20:11–14.) Tannenbaum and his paralegal at the TBS Firm

billed the Brewington Firm for their services, and the payment they received was made to the TBS Firm—not to Tannenbaum directly. (2025 Tannenbaum Decl. ¶¶ 14–15; 2023 Tannenbaum Decl. ¶ 9.)

Application of the third factor—whether Tannenbaum "reported to someone higher in the hierarchy"—to the undisputed factors also supports the conclusion that Tannenbaum was not an employee. *Carpenters Loc. 926*, 558 F. App'x at 85. The unique role that he occupied did not require him to report to Brewington, or anyone else at the Brewington Firm, in any traditional sense. Williams suggests that Tannenbaum reported to Brewington because, "[w]hen asked by Brewington, Tannenbaum 'provided guidance to attorneys at the [F]irm related to the Brewington law firm's cases'"; Brewington "asked Tannenbaum for advice related to the [Brewington] Firm's cases and Tannenbaum would provide Brewington with advice"; and, in one particular case, Brewington provided Tannenbaum and another attorney with the instruction that "[w]e need to call Mr. Barrere tomorrow to see if he is able to be deposed and if so give Defendants dates and then push [the] Court Conference back." (Pl.'s 56.1 Resp. ¶ 110.) Such examples do not raise a genuine dispute as to whether Tannenbaum reported to Brewington, who did not dictate Tannenbaum's hours, where he worked, which matters he worked on, or with whom he worked. As explained in Discussion Section II.A. *supra*, in the context of the record as a whole, these requests by Brewington signal a collaborative relationship with Tannenbaum as a highly skilled peer, whom Brewington consulted for discrete tasks and guidance relating to Tannenbaum's expertise in medical malpractice.

Therefore, application of the *Johnson & Higgins* factors to the facts in the record supports the conclusion that Tannenbaum was not an employee of the Brewington Firm for purposes of Title VII. Rather, Tannenbaum was a partner at his own law firm where he managed

his own cases and clients, with whom the Brewington Firm consulted on medical malpractice matters and to whom the Brewington Firm referred medical malpractice matters that it did not have the capacity to take on.

* * *

For all of the reasons explained above, viewing the record in the light most favorable to Williams and drawing all reasonable inferences in her favor, the undisputed record establishes that Tannenbaum was not a Brewington Firm employee at any point in either 2020 or 2021.

### III.  There is a Genuine Dispute of Material Fact as to whether Oscar Holt Was a Title VII Employee from June through December of 2020 and in 2021

Application of the *Reid* factors to the undisputed facts relating to Holt yields mixed results on the question of whether he was an employee of the Brewington Firm for Title VII purposes in either 2020 or 2021. Although I place less weight on the *Johnson & Higgins* factors, I nevertheless consider their application to the undisputed facts. The record as a whole, when viewed in the light most favorable to Williams and drawing all reasonable inferences in her favor, shows that there is a genuine dispute of material fact as to whether Holt was a Brewington Firm employee from June through December 2020 and in 2021 for the reasons addressed below.

#### A.  The *Reid* Factors

A holistic assessment of the *Reid* factors presents a close question regarding Holt's employment. The record before me is rife with disputes underlying the analysis of whether he was an employee. Specifically, nine of the thirteen *Reid* factors (the first, second, third, fourth, fifth, sixth, seventh, tenth, and eleventh) suggest that Holt was an employee, while the remaining four factors suggest that he was not an employee or are neutral. Of the five *Reid* factors identified by the Second Circuit to be given "more weight in the analysis," *Horror Inc.*, 15 F.4th at 249, *three* suggest that Holt was an employee. Therefore, the *Reid* test demonstrates that there

38

is a genuine dispute of material fact on the question of whether Holt was an employee of the Brewington Firm in 2020 and 2021.

I first address the *Reid* factors that weigh in favor of finding that Holt was an employee: the first, second, third, fourth, fifth, sixth, seventh, tenth, and eleventh *Reid* factors. Importantly, the first *Reid* factor is most important and suggests that Holt was an employee because the Brewington Firm "control[led] the manner and means" by which Holt accomplished his work. *Felder*, 27 F.4th at 843. Holt attests that he assisted Brewington with the Brewington Firm's criminal cases and that Brewington was always the lead on those cases. (2023 Holt Decl. ¶ 17.) In one matter, Holt "consult[ed] with Mr. Brewington and discuss[ed] strategy for mediation," attended the mediation, and discussed further strategy. (Pl.'s Holt Tr. 93:13–24.) In another matter, Holt attended a scheduling conference at Brewington's request. (*Id*. 84:5–87:4.) Holt was also heavily involved in another matter that later went to trial, in which he "assisted Mr. Brewington with whatever he needed." (*Id*. 51:15–20.) Furthermore, Holt complied with certain Brewington Firm policies and practices by signing its anti-sexual harassment policy and attending weekly meetings. (*See* Sexual Harassment Policy Receipt and Acknowledgement Form, ECF No. 100-21; Williams Decl. ¶ 9; 2023 Holt Decl. ¶ 14.)

The second *Reid* factor—"[t]he skill required"—is afforded great weight and weighs in favor of deeming Holt to be a Brewington Firm employee. *Felder*, 27 F.4th at 843. While Holt, like Tannenbaum, had decades of experience and specialized in a certain area of legal practice—criminal defense—the Brewington Firm did not solicit Holt's assistance to fulfill any particular need, but rather, to "increase [the Brewington Firm's] legal capacity on numerous levels, including evaluation of cases (legally and factually), in house instruction and case and trial preparation." (ECF No. 100-2 at 2.) Brewington's introduction of Holt noted that "[h]is area of

specialty most recently has been criminal defense, but he is eager to learn more about other aspects of our work." (*Id.*)

The third and fourth *Reid* factors also support a finding that Holt was an employee because the Brewington Firm acted as "the source of the instrumentalities and tools" for Holt's work and provided Holt's primary "location of work." *Felder*, 27 F.4th at 843. Because Holt regularly worked at the Brewington Firm's office suite, he relied on the Brewington Firm for office supplies, worked with the Brewington Firm's support staff and associates, and used a Brewington Firm email address. (2023 Holt Decl. ¶ 13; Pl.'s Holt Tr. 66:12–67:3, 69:6–11; Defs.' Holt Tr. 67:16–69:5; Pl.'s Walker Tr. 131:17–134:24; *see also* ECF No. 100-16.) While Holt personally purchased his own computer and monitor, as well as his own pens and paper clips, at least some of these decisions appear to be a matter of preference. (*See* Defs.' 56.1 Statement ¶ 48 ("Holt, who is an avid pen collector, does not use the [Brewington] Firm's pens; he utilizes his own pens in connection with his work with the [Brewington] Firm.").) Thus, on balance, Holt relied on the Brewington Firm to provide the requisite instrumentalities and tools. Holt also had his own office space at the Brewington Firm's office suite, worked there at least three days per week beginning around noon or 1:00 p.m., and attended weekly meetings. (2023 Holt Decl. ¶¶ 13–14; Williams Decl. ¶¶ 7, 9.) While Holt's schedule was limited by his teaching schedule at St. John's University, where he taught until at least spring 2020, and while he did not work normal business hours at the Brewington Firm, the record suggests that Holt conducted most or all of his work for the Brewington Firm at its office suite. (2023 Holt Decl. ¶ 5.)

The "duration" of Holt's relationship with the Brewington Firm, the fifth *Reid* factor, also suggests his status as an employee. *Felder*, 27 F.4th at 843. He joined the Brewington Firm "as a member of the legal staff in an of counsel role." (ECF No. 100-2 at 2.) Holt's work with the

40

Brewington Firm did not appear to be time-limited in scope or otherwise limited to a certain subset of cases. Indeed, the Brewington Firm included Holt's biography on its website and listed Holt as "of counsel" on its letterhead (ECF Nos. 100-4, 100-15); for his part, Holt listed the Brewington Firm's address as his business address on his New York State Unified Court System profile (ECF No. 100-22).

With respect to the sixth *Reid* factor, it is also clear that the Brewington Firm had "the right to assign additional projects" to Holt. *Felder*, 27 F.4th at 843. Holt attests that "it was understood that [he] would assist with" criminal cases. (2023 Holt Decl. ¶ 17.) While Holt had an "understanding" with Brewington that he would not work on other cases (*id*. ¶ 19), the Brewington Firm still exercised discretion over the matters on which Holt worked. For example, the four matters on which Holt worked in 2020 and 2021 were civil matters, even though Holt preferred to work on criminal matters, and Holt testified that "[he] was asked to assist and [] agreed to assist on those cases." (Pl.'s Holt Tr. 76:10–13.) Brewington also informed his staff that Holt "is expanding his work to match the other aspects of the work of the office" and encouraged Firm employees to support Holt "as he learns more about what and how we do things in the office." (ECF Nos. 100-2 at 2, 100-3 at 2.)

As discussed above, the seventh *Reid* factor—the "extent of the hired party's discretion over when and how long to work," *Felder*, 27 F.4th at 843—weighs in favor of finding Holt to be a Brewington Firm employee because Holt generally complied with the Brewington Firm's schedule, subject to certain limitations from his teaching schedule. (2023 Holt Decl. ¶¶ 13–14; Williams Decl. ¶¶ 7, 9; ECF No. 100-2 at 2.) These limitations were clearly understood and part of his employment arrangement when he first joined the Brewington Firm, as recognized by Brewington in his introduction memo. (*See* ECF No. 100-2 at 2 ("His hours will vary depending

41

on his current teaching schedule, but his presence will help to increase our legal capacity on numerous levels . . . .").)

Finally, the tenth and eleventh *Reid* factors also weigh in favor of finding that Holt was an employee because the matters on which he worked were "part of the regular business" of the Brewington Firm, which is clearly "in the business" of legal practice. *Felder*, 27 F.4th at 843. In 2020 and 2021, Holt worked on four of the Brewington Firm's civil matters. (2025 Holt Decl. ¶ 15; Defs.' Holt Tr. 75:22–24; Pl.'s 56.1 Resp. ¶¶ 30–31, 35.)

Therefore, the majority of the *Reid* factors—nine out of thirteen—weigh in favor of finding that Holt was an employee of the Brewington Firm in 2020 and 2021. However, out of the five most important *Reid* factors, only *three* suggest that he was an employee: the Brewington Firm's right "to control the manner and means of creation," "the skill required," and the Brewington Firm's right "to assign additional projects to the hired party" (the first, second, and sixth *Reid* factors, respectively). *Felder*, 27 F.4th at 843.

Additionally, the eighth, twelfth, and thirteenth *Reid* factors—"[t]he method of payment," the "provision of employee benefits," and the "tax treatment of the hired party"—also all suggest that Holt was *not* an employee. *Felder*, 27 F.4th at 843. The Brewington Firm did not provide Holt with regular compensation or a salary, and Holt was not a W-2 employee. (Defs.' 56.1 Statement ¶ 44; Pl.'s 56.1 Resp. ¶ 17; 2025 Holt Decl. ¶ 7.) The only compensation he received for his work in 2020 or 2021 was a check for $5,500, issued on March 29, 2021, for work performed on one particular matter that involved a mediation. (Pl.'s 56.1 Resp. ¶ 17; Pl.'s Holt Tr. 94:3–94:23; ECF No. 96-4.) Additionally, the Brewington Firm did not reimburse Holt for any expenses incurred in connection with his work on the Brewington Firm's cases. (Defs.' Holt

Tr. 62:5–10.) Nor did Holt receive health insurance or other traditional employment benefits from the Brewington Firm. (2025 Holt Decl. ¶ 9.)

Finally, "the hired party's role in hiring and paying assistants," the ninth *Reid* factor, is inconclusive. *Felder*, 27 F.4th at 843. The parties do not address this factor, and the record does not shed light on whether Holt was involved in hiring or paying anyone at the Brewington Firm. I therefore do not consider this factor.

Accordingly, considering all of the *Reid* factors and placing greater weight on those factors considered more significant by the Second Circuit, the record presents a very close question as to whether Holt was a Brewington Firm employee in 2020 or 2021.

## B.  The *Johnson & Higgins* Factors

As addressed, the *Johnson & Higgins* test is less pertinent than the *Reid* test to the question of Holt's employment because there is no evidence in the record suggesting that Holt was a higher-level employee of the Brewington Firm. *See* Discussion Section I *supra*. Nevertheless, I consider the *Johnson & Higgins* factors and find that they weigh in favor of finding that Holt was a Brewington Firm employee from June through December 2020 and in 2021.

With respect to the first *Johnson & Higgins* factor, Holt "undert[ook] traditional employee duties" on the four civil cases handled by the Brewington Firm on which he worked in 2020 and 2021. *Carpenters Loc. 926*, 558 F. App'x at 85. His responsibilities on these matters included, among other things, attending a scheduling conference, discussing mediation strategy with Brewington, attending the mediation, and preparing the client for mediation. (Pl.'s Holt Tr. 93:2–24.) Holt also attended weekly Firm meetings, mentored Brewington Firm attorneys on their criminal matters, and appeared in court alongside Brewington. (Williams Decl. ¶ 9; 2023

Holt Decl. ¶ 14; Defs.' Brewington Tr. 227:19–228:7.) The record does not indicate precisely when in 2020 or in 2021 he carried out these traditional employee duties.

As to the second *Johnson & Higgins* factor, Holt was not "regularly employed" by a separate entity for any part of 2021, which suggests that he may have been a Brewington Firm employee that year. *Carpenters Loc. 926*, 558 F. App'x at 85. While Holt was a full-time faculty member at St. John's University for at least part of 2020, it is undisputed that his teaching obligations concluded in the spring of 2020—even if he did not retire from his position on the faculty until September 30, 2020. (2023 Holt Decl. ¶ 5; 2025 Holt Decl. ¶ 10.) Although Holt maintained his private law practice—The Law Office of Oscar Holt III—while at the Brewington Firm, Holt operated this practice in a "limited" manner once he joined the Brewington Firm, according to Brewington. (*See* ECF No. 100-2 ("He is a very experienced trial lawyer and, while limited, he will continue to maintain his private practice of law.").) Thus, there is a genuine dispute of material fact as to whether Holt was an employee at the Brewington Firm from June through December 2020.

Finally, the third *Johnson & Higgins* factor—whether Holt "reported to someone higher in the hierarchy"—weighs slightly in favor of concluding that Holt was an employee of the Brewington Firm notwithstanding his extensive experience and seniority. As with Tannenbaum, the record appears mixed at first glance regarding whether Holt "reported to someone higher in the hierarchy." *Carpenters Loc. 926*, 558 F. App'x at 85. While Holt "support[ed]" and "assist[ed]" Brewington with his criminal cases, it is not apparent that his assistance resembled that of an employee reporting to a supervisor, as opposed to two highly experienced colleagues conferring on a matter. However, Brewington was always the lead on the cases on which Holt worked; Holt agreed to comply with certain Firm policies and practices by signing the

Brewington Firm's anti-sexual harassment policy; and Holt attended weekly firm-wide meetings. (ECF No. 100-21; Williams Decl. ¶ 9; 2023 Holt Decl. ¶ 14.) The Brewington Firm also exercised a degree of discretion over the matters on which Holt worked. For example, the four matters on which Holt worked in 2020 and 2021 were civil matters, despite Holt's preference for criminal matters, and Holt testified that "[he] was asked to assist and [] agreed to assist on those cases." (Pl.'s Holt Tr. 76:10–13; *see also* 2023 Holt Decl. ¶¶ 17, 19.) Brewington described Holt as "expanding his work to match the other aspects of the work of the office." (ECF Nos. 100-2 at 2, 100-3 at 2.) Thus, on balance, the third *Johnson & Higgins* factor suggests that Holt "reported to" Brewington even though his role was far more senior than those of other Brewington Firm employees.

Therefore, the *Johnson & Higgins* factors suggest that Holt was an "employee" within the meaning of Title VII in 2020 and 2021, although this analysis is given less weight than the *Reid* analysis.

* * *

For all of the reasons addressed above, application of the *Reid* factors yields mixed results whereas the *Johnson & Higgins* factors weigh in favor of finding that Holt was indeed a Brewington Firm employee from June through December 2020 and in 2021. Viewing the record as a whole in the light most favorable to Williams and drawing all reasonable inferences in her favor, the record presents, at a minimum, a genuine dispute of material fact as to whether Holt was a Brewington Firm employee from June through December 2020 and for all of 2021. *See Snead v. City of New York*, 463 F. Supp. 3d 386, 398 (S.D.N.Y. May. 28, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)); Fed. R. Civ. P. 56. However, because Tannenbaum was *not* an employee of the Brewington Firm in either year, the undisputed record establishes

45

that the Brewington Firm did not have at least fifteen employees for twenty weeks in either 2020 or 2021 as required for it to be a Title VII "employer" during the timeframe relevant to Williams' claims. *See* 42 U.S.C. § 2000e(b). Accordingly, summary judgment is granted to the Brewington Firm on Williams' Title VII claims.

## IV.   NYSHRL Claims

Williams also brings claims under the New York State Human Rights Law against all Defendants for sexual harassment, discriminatory termination, and retaliation, as well as claims against Brewington and Lockett for aiding and abetting sexual harassment, discriminatory termination, and retaliation. (Am. Compl. ¶¶ 218–240.)

A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023).

Here, summary judgment is granted to the Brewington Firm on Williams' Title VII claims, which are the only federal claims in this action. The only remaining claims are Williams' state law claims under the NYSHRL. The Amended Complaint does not assert any independent basis for jurisdiction over the NYSHRL claims, such as diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* Am. Compl. ¶¶ 13–15.) Accordingly, I decline to exercise supplemental jurisdiction over the NYSHRL claims under 28 U.S.C. § 1367(c)(3). *Chinniah*, 62 F.4th at 703; *see also Tang v. Grossman*, No. 22-464, 2023 WL 2229366, at *3 (2d Cir. Feb. 27, 2023) (summary order) (noting that a district court declining to exercise supplemental jurisdiction "is the proper outcome when a court has dismissed all claims 'over which it has original

46

jurisdiction'"); *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 323–24 (E.D.N.Y. 2024) (declining to exercise supplemental jurisdiction over NYSHRL claim after dismissing plaintiff's claims under Title VII); *Brown v. S. Shore U. Hosp.*, 762 F. Supp. 3d 191, 216 (E.D.N.Y. 2025) (same).

## CONCLUSION

For the reasons set forth above, I grant Defendants' Renewed Motion for Summary Judgment in full. Summary judgment is granted to the Brewington Firm on Williams' Title VII claims. Because I decline to exercise supplemental jurisdiction over Williams' remaining state law claims against all Defendants under 28 U.S.C. § 1367(c)(3), these claims are dismissed without prejudice. The Clerk of Court is directed to enter Judgment and close the case.

Dated: Central Islip, New York
        June 12, 2026

　　　　　　　　　　　　　　 */s/ Nusrat J. Choudhury*
                         NUSRAT J. CHOUDHURY
                         United States District Judge

**APPENDIX A[9]**

**2020 Employees of the Law Offices of Frederick K. Brewington and Precilla Locket Based on Defendants' Response to Williams' Interrogatory No. 11**

| Week Start Date | Week End Date | Number of Employees Identified by Defendants in Response to Interrogatory No. 11 as Working for Part of the Year | Number of Employees Identified by Defendants in Response to Interrogatory No. 11 as Working for the Entire Year | Total Number of Employees for the Week |
|---|---|---|---|---|
| 1/1/2020 | 1/7/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 1/8/2020 | 1/14/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 1/15/2020 | 1/21/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 1/22/2020 | 1/28/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |

---

[9] The Court created this chart based on Defendants' Supplemental Response to Plaintiff's First Set of Interrogatories Related to Title VII Applicability, dated February 15, 2023, Interrogatory No. 11, which asked Defendants to "[i]dentify each and every person or employee who worked at the Firm in 2020 and his or her dates of employment." (ECF No. 47-13 at 7–9.)

48

| 1/29/2020 | 2/4/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
|---|---|---|---|---|
| 2/5/2020 | 2/11/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 2/12/2020 | 2/18/2020 | 4 (Alain D. Alisca, Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 15 |
| 2/19/2020 | 2/25/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 2/26/2020 | 3/3/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 3/4/2020 | 3/10/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 3/11/2020 | 3/17/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert | 14 |

| | | | Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | |
|---|---|---|---|---|
| 3/18/2020 | 3/24/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 3/25/2020 | 3/31/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 4/1/2020 | 4/7/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 4/8/2020 | 4/14/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 4/15/2020 | 4/21/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 4/22/2020 | 4/28/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie | 13 |

| | | | Walker, Dana-Simone Williams, Casey Wilson) | |
|---|---|---|---|---|
| 4/29/2020 | 5/5/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 5/6/2020 | 5/12/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 5/13/2020 | 5/19/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 5/20/2020 | 5/26/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 5/27/2020 | 6/2/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |
| 6/3/2020 | 6/9/2020 | 3 (Gulfam Dhillon, Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 14 |

| | | | | |
|---|---|---|---|---|
| 6/10/2020 | 6/16/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 6/17/2020 | 6/23/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 6/24/2020 | 6/30/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 7/1/2020 | 7/7/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 7/8/2020 | 7/14/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 7/15/2020 | 7/21/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 7/22/2020 | 7/28/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert | 13 |

| | | | | |
|---|---|---|---|---|
| | | | Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | |
| 7/29/2020 | 8/4/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 8/5/2020 | 8/11/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 8/12/2020 | 8/18/2020 | 2 (Cathryn Harris, Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 13 |
| 8/19/2020 | 8/25/2020 | 1 (Tricia Lindsay) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 8/26/2020 | 9/1/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 9/2/2020 | 9/8/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie | 11 |

| | | | Walker, Dana-Simone Williams, Casey Wilson) | |
|---|---|---|---|---|
| 9/9/2020 | 9/15/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 9/16/2020 | 9/22/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 9/23/2020 | 9/29/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 9/30/2020 | 10/6/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 10/7/2020 | 10/13/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |
| 10/14/2020 | 10/20/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 12 |

| 10/21/2020 | 10/27/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | | 12 |
| 10/28/2020 | 11/3/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | | 12 |
| 11/4/2020 | 11/10/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | | 12 |
| 11/11/2020 | 11/17/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | | 12 |
| 11/18/2020 | 11/24/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | | 12 |
| 11/25/2020 | 12/1/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | | 12 |
| 12/2/2020 | 12/8/2020 | 1 (Gulfam Dhillon) | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert | | 12 |

| | | | | |
|---|---|---|---|---|
| | | | Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | |
| 12/9/2020 | 12/15/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 12/16/2020 | 12/22/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 12/23/2020 | 12/29/2020 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |
| 12/30/2020 | 1/5/2021 | | 11 (Jeanette Berry, Corliss Gittens, Ashley Johnson, Dwayne Lindsey, Precilla Lockett, Albert Manuel, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Dana-Simone Williams, Casey Wilson) | 11 |

**APPENDIX B[10]**

**2021 Employees of the Law Offices of Frederick K. Brewington and Precilla Locket Based on Defendants' Response to Williams's Interrogatory No. 12**

| Week Start Date | Week End Date | Number of Employees Identified by Defendants in Response to Interrogatory No. 11 as Working for Part of the Year | Number of Employees Identified by Defendants in Response to Interrogatory No. 11 as Working for the Entire Year | Total Number of Employees for the Week |
|---|---|---|---|---|
| 1/1/21 | 1/7/21 | 9 (Jeanette Berry, Alexis Epstein, Itohen Ihaza, Dwayne Lindsey, Kristina Negri, Cobia Powell, Dennis Swanson, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 18 |
| 1/8/21 | 1/14/21 | 9 (Jeanette Berry, Alexis Epstein, Itohen Ihaza, Dwayne Lindsey, Kristina Negri, Cobia Powell, Dennis Swanson, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 18 |
| 1/15/21 | 1/21/21 | 9 (Jeanette Berry, Alexis Epstein, Itohen Ihaza, Dwayne Lindsey, Kristina Negri, Cobia Powell, Dennis Swanson, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 18 |
| 1/22/21 | 1/28/21 | 5 (Jeanette Berry, Dwayne Lindsey, Kristina Negri, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 1/29/21 | 2/4/21 | 5 (Jeanette Berry, Dwayne Lindsey, Kristina Negri, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |

---

[10] The Court created this chart based on Defendants' Supplemental Response to Plaintiff's First Set of Interrogatories Related to Title VII Applicability, dated February 15, 2023, Interrogatory No. 12, which asked Defendants to "[i]dentify each and every person or employee who worked at the Firm in 2021 and his or her dates of employment." (ECF No. 47-13 at 9–10.)

57

| | | | | |
|---|---|---|---|---|
| 2/5/21 | 2/11/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 2/12/21 | 2/18/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 2/19/21 | 2/25/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 2/26/21 | 3/4/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 3/5/21 | 3/11/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 3/12/21 | 3/18/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 3/19/21 | 3/25/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 3/26/21 | 4/1/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard | 14 |

| | | | | |
|---|---|---|---|---|
| | | Matilda Warren, Dana-Simone Williams) | Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | |
| 4/2/21 | 4/8/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 4/9/21 | 4/15/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 4/16/21 | 4/22/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 4/23/21 | 4/29/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 4/30/21 | 5/6/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 5/7/21 | 5/13/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 5/14/21 | 5/20/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |

| | | | | |
|---|---|---|---|---|
| 5/21/21 | 5/27/21 | 5 (Jeanette Berry, Itohen Ihaza, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 14 |
| 5/28/21 | 6/3/21 | 4 (Jeanette Berry, Dwayne Lindsey, Matilda Warren, Dana-Simone Williams) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 6/4/21 | 6/10/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 6/11/21 | 6/17/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 6/18/21 | 6/24/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 6/25/21 | 7/1/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 7/2/21 | 7/8/21 | 2 (Jeanette Berry, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 11 |
| 7/9/21 | 7/15/21 | 3 (Jeanette Berry, Maria Dyson, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard | 12 |

| | | | | |
|---|---|---|---|---|
| | | | Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | |
| 7/16/21 | 7/22/21 | 3 (Jeanette Berry, Maria Dyson, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 7/23/21 | 7/29/21 | 3 (Jeanette Berry, Maria Dyson, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 7/30/21 | 8/5/21 | 3 (Jeanette Berry, Maria Dyson, Matilda Warren) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 8/6/21 | 8/12/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 8/13/21 | 8/19/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 8/20/21 | 8/26/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 8/27/21 | 9/2/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |

| 9/3/21 | 9/9/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
|---|---|---|---|---|
| 9/10/21 | 9/16/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 9/17/21 | 9/23/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 9/24/21 | 9/30/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 10/1/21 | 10/7/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 10/8/21 | 10/14/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 10/15/21 | 10/21/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 10/22/21 | 10/28/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard | 13 |

| | | | Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | |
|---|---|---|---|---|
| 10/29/21 | 11/4/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 11/5/21 | 11/11/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 11/12/21 | 11/18/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 11/19/21 | 11/25/21 | 4 (Jeanette Berry, Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 13 |
| 11/26/21 | 12/2/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 12/3/21 | 12/9/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 12/10/21 | 12/16/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |

| 12/17/21 | 12/23/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 12/24/21 | 12/30/21 | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |
| 12/31/21 | | 3 (Maria Dyson, Cobia Powell, Dennis Swanson) | 9 (Corliss Gittens, Gabriel Leparik, Precilla Lockett, Albert Manuel, Richard Mason, Carl Saunders, Lavern Van Ommeren, Rosemarie Walker, Casey Willson) | 12 |